## ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant, v. LINDELL RAILWAY COMPANY et al.

### Division One, July 1, 1905.

1. **PUBLIC HIGHWAY: How Established.** A public highway may be acquired over property of a private individual by, first, a grant or deed; second, a dedication by plat or deed; and, third, by acts *in pais* which in law amount to a dedication.

2. ———: ———: **Dedication in Pais: Street: Right of Way of Railroad.** The dedication by acts *in pais* need not necessarily be of the whole right to the property. The fact that a street railway company before and since the eighty-foot street was laid out owned and used a right of way thirty feet wide across the street does not prevent by its acts *in pais* a dedication by it of the thirty feet to street uses. It is within the power of the city to lay out, establish, condemn or acquire a street to cross the right of way of an existing railroad. A street thus acquired is subject to the paramount right of the existing railroad company, but the two uses of the land for, first, a right of way of the railroad, and, second, for street purposes, are consistent, compatible and legal uses.

3. ———: ———: ———: ———: ———: **Acceptance: Facts in Evidence.** The evidence shows that the city for twenty years treated that part of a previously existing railroad's right of way included in a street as a part of the street, assessing benefits against the railroad for the street's improvement, opening and

grading the street across it, laying water pipes thereon beneath the surface, constructing sewers thereunder, building sidewalks, and in all respects treating it as much a part of the street as any portion thereof, and that the railroad company knew of such use by the city, consented thereto, and paid its benefit assessments taxed against it. *Held*, that the conduct of the railroad company amounted to a dedication *in pais* of that portion of the right of way included in the street, and the acts of the city constitute an acceptance of the dedication.

4. ——: ——: ——: **Limitation.** Where the right of way of a railroad company has been dedicated to the public use by its acts *in pais*, the defense of the statute that property dedicated to public use can not be acquired by adverse possession, is not available.

5. ——: **Dedication in Pais: City's Authority Over: Railway: Condemnation.** Where a street has been dedicated to public use by a pre-existing railroad's acts *in pais*, the city has authority to authorize another railroad company to construct and maintain street car tracks on the same. Such railroad company can not condemn a right of way in or across the street, but the city's authority to authorize it to construct and maintain its tracks in the street does not rest on the law of eminent domain, but on the constitutional provision which expressly reserves to a city the right to say whether or not a railway shall be operated on any of its streets.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*Jefferson Chandler* for appellant.

(1) No one can gain title to plaintiff's property through or because of a lack of defendant's diligence in protecting it. Adverse possession of it gives no title to it. Railroad v. Totman, 149 Mo. 657. Plaintiff can not dedicate its railroad ground to the city and keep it at the same time. A dedication of the whole system would be void. Plaintiff can not change its route, or give up its ground, in whole or in part, without the consent of the State, acting directly. Plaintiff has no power to impair its own usefulness by giving away part

of its ground to the city. If one railroad company de-
sires to cross the tracks of another railroad corpora-
tion, such corporations may agree directly among them-
selves and not indirectly through the city. If the rail-
road corporations cannot agree then the law prescribes
the exclusive conditions, and the processes through
which the crossing can be made. The city is not a fac-
tor in the conditions or processes. The power of the
plaintiff to operate a railroad, and the limitations upon
its power then existing now continue. Plaintiff had no
power to consent to the laying of sewers, gas pipes,
and other mentioned improvements, in the country
highway, and no such power existed in the country high-
way itself. (2) The court will not hold plaintiff be-
yond the legal effect of the facts upon which the al-
leged dedication is predicated. One may dedicate land
for a street and reserve the right for a railroad on the
same street. Noblesville v. Railroad, 30 Ind. 1; Rail-
road v. Waycross, 91 Ga. 575; Railroad v. Larson, 40
Kan. 301. (3) The law of dedication *in pais* has no
application to the construction of a railroad crossing
by a public street; no record is made of a dedication
*in pais*. The city in opening public streets is required
to proceed in so doing by ordinance. It is not com-
templated in law that the title to city streets shall rest
in parol license. What occurred between the plaintiff
and the city or persons in the absence of defendants,
is not evidence in favor of defendants at all. Green-
leaf Evidence, sec. 305. (4) There are only two ways
known to the law of Missouri to effect a crossing of one
railroad's company's track by the tracks of another
railroad company: (a) It may be done by agreement
of the parties. (b) It may be done by condemnation.
There is no such thing known to the law as that such
right arises *in pais*. The courts are the judges of the
public welfare. Railroad v. Kansas City, 110 Mo. 510;
2 Tucker on the Constitution, 870; Monongahela N. Co.
v. United States, 148 U. S. 312; Loan Assn. v. Topeka,

20 Wall. 655; Railroad v. Nebraska, 164 U. S. 403. (5) The Legislature having provided who shall determine the questions arising out of an effort of one railroad company to cross another, no other person or tribunal can substitute its judgment for that of the tribunal appointed. Mills, Eminent Domain, sec. 84; Springfield v. Whittock, 34 Mo. App. 649.

*Boyle, Priest & Lehmann* for respondent.

(1) The strip of land in question is a public highway and a part of Hamilton avenue, becoming such: First.—By prescription through use as a public highway for more than ten years. Schenck v. City of Butler, 50 Mo. App. 106; Heitz v. St. Louis, 110 Mo. 618; Meniers v. St. Louis, 130 Mo. 274; Albert v. Railroad, 2 Tex. Civ. App. 664. Second.—By dedication *in pais,* made both by the owners of the fee and by the owners of the railroad right of way. City of Eureka v. Armstrong, 22 Pac. 928; Ellsworth v. Lord, 40 Minn. 337; Kellogg v. Malin, 50 Mo. 496; Chouteau v. Railroad, 122 Mo. 375; Hannibal v. Railroad, 49 Mo. 480; Railroad v. Brownell, 24 N. Y. 345; Railroad v. Greenbank, 52 N. Y. 510; Lewis on Eminent Domain, sec. 491; Railroad v. Chicago, 29 N. E. 1109; Railroad v. Railroad, 66 Mass. 605; Railroad v. Chicago, 166 U. S. 226; 3 Elliott on Railroads, sec. 1135; City v. Railroad, 29 N. E. 484; Lade v. Shepherd, 2 Strange 1004; Gamble v. St. Louis, 12 Mo. 618; Stevens v. Nashua, 46 N. H. 192; Moffett v. South Park, 138 Ill. 620; Witter v. Donitz, 81 Wis. 385; Manderschid v. Dubuque, 29 Ia. 73; Dillon on Mun. Corp., sec. 631; Rosenberger v. Miller, 61 Mo. App. 422. (2) Formal acceptance by the city was not necessary to its establishment as a public highway. Boyd v. Springfield, 62 Mo. App. 456; Brown v. Railroad, 20 Mo. App. 427; State v. Wells, 70 Mo. 635. (3) The city has accepted the strip of land in question as a part of Hamilton avenue. Gibson v. Zimmerman, 27 Mo. App. 90; Maus v. Springfield, 101 Mo.

613; Hill v. Sedalia, 64 Mo. App. 494; Golden v. Clinton, 54 Mo. App. 100. (4) A public highway or crossing may be established over a railroad right of way by user. Easley v. Railroad, 113 Mo. 236; Railroad v. Crownpoint, 50 N. E. 741; Railroad v. Ft. Branch, 49 N. E. 2; Railroad v. Britt, 74 N. W. 933; Railroad v. Greensburg, 35 Atl. 122; Kelly v. Railroad, 9 N. W. 589; Railroad v. Kaufman Co., 42 S. W. 586; Soward v. Railroad, 33 Ia. 386; Railroad v. Jordan, 10 A. & E. R. R. C. 301; Railroad v. Boswell, 36 N. E. 1103; Railroad v. Waycross, 13 S. E. 835; Village v. Railroad, 46 Minn. 505. (5) The question involved is to be determined, in so far as it depends upon the intention of the proprietors of the land, by past acts evidencing that intention, rather than by present testimony concerning it. Columbus v. Dahn, 36 Ind. 330; McCain v. Des Moines, 174 U. S. 168. (6) A street or highway, however established, whether by prescription or dedication, may be put to any public use consistent with its use as a highway. Railroad by Whitham, 155 Ill. 514; Railroad v. Stephens, 29 S. W. 14; Julia Building Ass'n v. Bell Co., 88 Mo. 258; Elliott on Roads and Streets, 133; Cincinnati v. White, 6 Peters 431; State v. Walters, 69 Mo. 463; State v. Wells, 70 Mo. 635; State v. Proctor, 90 Mo. 334; Railroad v. Railroad, 97 Mo. 457. (7) A street once established is such for all the public, and the original owner may not exclude any from its use. Atty.-General v. Farr, 19 N. E. 358; Penny Pot Landing v. City, 16 Pa. St. 79; 9 Am. and Eng. Ency. Law, 23.

MARSHALL, J.—This is a bill in equity to enjoin the defendants from crossing the tracks of the plaintiff on Hamilton avenue, in the city of St. Louis. Upon final hearing the trial court dissolved the injunction and dismissed the bill, and the plaintiff appealed. This being a proceeding in equity, the facts will be stated in the course of the opinion.

## I.

The decisive question in this case is, whether Hamilton avenue is a public highway or street in the city of St. Louis. All other questions are subsidiary to this main question and the solution of the main question carries with it the determination of the greater portion of the contention of counsel for plaintiff in this case.

All the parties hereto are street railway companies in the city of St. Louis, organized under the laws of this State. The plaintiff is a successor or grantee of the old St. Louis & Florissant Railway Company. In 1870, the St. Louis & Florissant Railway Company was a steam railway, operated upon a narrow-gauge track. The eastern terminus was at a point almost midway between Grand avenue on the east, Vandeventer on the west, Olive on the south, and Washington avenue on the north. Its western terminus was Florissant in St. Louis county. Defendant acquired its own right of way, which, at the point here involved, was thirty feet wide. At that time nearly the entire route of said railway lay outside of the city of St. Louis. When the city and county of St. Louis were separated and the limits of the city were extended, the locality involved in this case became a part of the city. At that time, and for many years afterwards, there were no streets in that portion of the city where Hamilton avenue now is, and very few houses of any character or description. About 1875 the owners of the property in the neighborhood of Hamilton avenue subdivided their land and platted it, laying it off into city lots and making them abut the right of way of the old railroad company. Thereafter, the locality rapidly increased in population and importance. At a time, not definitely stated, but which all the evidence shows to have been about eighteen years before the institution of this suit, streets were projected, running north and south and crossing the right of way of said railway company.

Among them was Hamilton avenue. That street was laid out as a public highway eighty feet wide. It ran north and south and crossed plaintiff's right of way at right angles. The plaintiff and its predecessors never dedicated by deed or plat the portion of the right of way as a part of Hamilton avenue, nor was the same ever condemned for street purposes. But the city of St. Louis opened and graded the street for its full width. across the plaintiff's right of way; laid water pipes thereon beneath the surface; constructed sewers thereunder; built sidewalks, and in all respects made it, so far as appearance and use was concerned, as much a part of the street as any other portion thereof. Electric wires were strung on and over the same, and the city, every year, sprinkled it just as it did other public streets. The cost of construction of the street and sidewalk and of the sprinkling was assessed against plaintiff or its predecessors as an abutting owner, and it was paid by the plaintiff and its predecessors. On each side, to the east and west of Hamilton avenue, the plaintiff, or its predecessors, placed signs on the right of way lying to the east and west of Hamilton avenue which read: "Private right of way—Keep off the tracks."

During all said period of eighteen or twenty years, while the city was so using and treating it as a part of the public highway, Hamilton avenue, including the portion of the plaintiff's thirty-foot right of way, aforesaid, was opened to public use, and was used generally by citizens for all the purposes for which streets are commonly used. During all that time neither the plaintiff nor its predecessors objected to such use or claimed that it was not a public highway. On the contrary, the plaintiff and its predecessors paid all of the charges, special taxes, and assessments which were levied against the remaining part of its private right of way, and which were levied by the city for the improvement of Hamilton avenue, includ-

ing the portion of said thirty-foot strip. Originally the track of the plaintiff and its predecessors, at said point, was a T rail, and plaintiff and its predecessors placed a board crossing thereat, but subsequently the plaintiff removed the T rail from within the limits of what is claimed to be Hamilton avenue and substituted therefor a girder rail, such as the city ordinances require shall be used by street railroads. The remaining portions of the plaintiff's track, outside of Hamilton avenue, and other streets that are in the same condition as to being public highways, and which portions lie entirely within the limits of the plaintiff's right of way, still have T rails thereon. At no time until shortly before the institution of this suit had the plaintiff or its predecessors claimed or asserted that Hamilton avenue did not include the portion of said thirty-foot strip aforesaid. In fact the plaintiff does not now claim that it is not a public highway for all the uses to which a public highway can be legitimately applied or devoted, except for the construction of a rival street railway thereover.

A public highway may be acquired over property of a private individual by, first, a grant or deed; second, a dedication by plat or deed, and, third, by acts *in pais,* which in law amount to a dedication. [Heitz v. St. Louis, 110 Mo. 618; Meiners v. St. Louis, 130 Mo. 274; Buschmann v. St. Louis, 121 Mo. 523.]

The question in this case is, whether or not the conduct of the plaintiff and its predecessors amount to a dedication by acts *in pais,* and whether or not the acts of the city constitute an acceptance of the dedication.

The testimony clearly and conclusively shows that the city treated the said portion of said strip as a part of Hamilton avenue for nearly twenty years before this suit was instituted and that it used it for all the purposes for which a street on, under and above the surface, is commonly used. The plaintiff knew of

such use by the city, consented thereto, and paid the assessments for the improvement of it as a street in like manner and degree that any other abutting owner pays for the improvement of a street. There is scarcely an act that could be performed by a city with reference to a street that has not been performed by the city with reference to Hamilton avenue, including the strip in controversy.

The plaintiff, however, contends that a dedication, whether by deed, grant, plat or acts *in pais* must be and necessarily is of the whole right to the property, and that there is, and can be, no dedication in this case because the plaintiff and its predecessors have always used it as a part of its right of way. This contention is untenable. It was, and is, clearly within the power of a city to lay out, establish, condemn or acquire a street to cross a right of way of an existing railroad company. The street thus acquired is subject to the paramount right of the existing railroad company, but the two uses of the land for, first, a railroad right of way, and second, for street purposes, are consistent, compatible and legal uses . [Railroad v. Chicago, 166 U. S. 233; Railroad v. Gordon, 157 Mo. l. c. 77.]

This is necessarily true, for otherwise a street could never be projected across a railroad, nor could the city acquire the right of way to have a street cross a railroad even though it sought to do so by condemnation. Yet section 4 of article 12 of the Constitution expressly reserves the power and right of eminent domain in such cases, and authorizes a proceeding by a city to condemn the right to construct and maintain a street across the right of way of an existing railroad. In fact the plaintiff concedes the city could have acquired such a right in this case if it had proceeded by condemnation. If it had proceeded by condemnation, it would have acquired only the same right it did acquire by a dedication, by the plaintiff, by acts *in pais*. Such a dedication did not in any manner impair the plain-

tiff's right to use the property as a right of way, nor did it amount to a breach of trust by the railroad of its right to the land covered by the right of way.

The plaintiff, however, contends that under the decision of this court in Railroad v. Totman, 149 Mo. 657, title to railroad property can never be acquired by adverse possession under the statutes of this State where such possession began since the taking effect of the General Statutes of 1865. That case held that a railroad right of way constituted property devoted to a public use, and, therefore, the statute of limitations did not run against the railroad and in favor of one who had taken possession of a portion thereof. In other words, that such a possession, under our statutes, does not constitute adverse possession and can never ripen into a title by limitation. The conclusion reached in that case met with the approval of this division of this court, and nothing has appeared since to cause the court to change the conclusion then announced. But the doctrine there announced in no manner determines the question here involved. The question here is, not whether the city acquired title by limitation, but whether the plaintiff and its predecessors dedicated the thirty-foot strip, aforesaid, to public use as a street, by acts *in pais*. A dedication by acts *in pais* may be a perfectly valid dedication, although the city has not been in the possession and enjoyment thereof for a period of time necessary to constitute title by limitation. In other words, the two legal propositions depend upon totally different principles. The conclusion is irresistible that the plaintiff and its predecessors dedicated that portion of its thirty-foot strip, lying within the limits of Hamilton avenue, to public use as a street, subject to its right to maintain and operate its railroad thereon. Being dedicated as a public street it passed at once to the control of the public authorities for all purposes for which any pub-

lic street may lawfully be used. [Elliott on Roads and Streets, p. 133.]

## II.

The next question in this case is, whether Hamilton avenue being a public street, the city of St. Louis had a right to authorize the defendants to construct and maintain street car tracks on the same.

The plaintiff contends that the question of the necessity for the acquisition of a right of way for a railroad is a judicial question, and must be decided by the courts, and is beyond the power of a municipality or of the Legislature to determine. In the abstract, where a railroad company seeks to condemn private property for a railroad right of way, the use to which it is to be devoted is a judicial question. But this rule of law is not determinative in this case, for the defendants are not seeking to condemn plaintiff's property for a right of way, but are claiming a right to run over the streets by virtue of an ordinance duly enacted by the city of St. Louis authorizing them to do so.

Given the premise that Hamilton avenue is a public street, it follows that the defendants could not condemn a right of way over the same, for section 20 of article 12 of the Constitution expressly reserves to a city, town or village the right to say whether or not a street railroad shall be operated on any of its streets. Street railroads constitute a legitimate use of a public street. [Julia Building Assn. v. Bell Telephone Co., 88 Mo. 258.] Such railroads are simply another method of transporting citizens over the streets, and it has been held that they may not only be legally authorized on the street, but that their presence thereon does not constitute an additional servitude.

The infirmity of the plaintiff's whole contention upon this branch of the case consists in its failure to differentiate between an ordinary acquisition of a right of way over private property by means of the

exercise of the right of eminent domain, and the construction of a street railroad on an existing street under, and by virtue of, the authority and permission of the city. Under the facts in judgment here it is impossible to escape the conviction that the plaintiff and its predecessors intended to dedicate the portion of its right of way lying within the limits of Hamilton avenue to public use as a street, subject to its right of way thereover, and being a public street it was within the power of the city to permit the defendants to construct, maintain and operate a street railway over the same, and that the plaintiff is not now in a position to claim that such a street railway, even though it be a rival railway, could only be constructed across plaintiff's right of way after a right so to do had been acquired by condemnation.

The judgment of the circuit court is right and is affirmed.

All concur.