CITY OF ST. LOUIS, Appellant, v. WILLIAM R. MOORE et al.

In Banc, December 21, 1916.

**CONDEMNATION: School Property for Street Purposes: Public Policy.**
The power of a city to condemn property for street purposes is limited to the condemnation of private property, and does not extend to property of the State held for the State by a school district or other subordinate agency of the State, as distinguished from other corporations; and if public policy demands a different rule, the remedy is with the General Assembly, and not with courts.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

AFFIRMED.

*Charles H. Daues, Truman P. Young* and *George William Senn* for appellant.

*Robert Burkham* for respondents.

WOODSON, J.—This is a proceeding instituted in the circuit court of the city of St. Louis, under authority of Ordinance No. 27024, in condemnation for the establishment and opening of Slattery Street from Montgomery Street to St. Louis Avenue.

The facts are these: As will appear from plaintiff's "Exhibit A" (which accompanies this statement, p. 433), the physical block, bearing, however, separate city block numbers for the eastern and western portions, is somewhat irregular, bounded on the north by St. Louis Avenue (100 feet wide), on the south by Montgomery Street, east by Glasgow Avenue, and west by Garrison Avenue, respectively, each 60 feet wide; Slattery Street (60 feet wide) was laid out in 1885 northwardly from Montgomery Street, approximately half way through the block. In 1894 the board of education of the city of St. Louis acquired in the block the site having a front of 169

feet and 8½ inches (less 7 feet and 6 inches, the one-half of a private alley), by a depth eastwardly of 185 feet and 6 inches on its south line. In the years 1895 to 1897 the Columbia School was erected on this site.

Until June, 1905, the property immediately east of the school site, and having a front on St. Louis Avenue, was owned by William F. Hull et al.; on the western portion of the Hull property (appearing on the exhibit in the name of Board of Education of the city of St. Louis) was the Hull residence, and on the eastern portion of the Hull property (on the two lots appearing on the exhibit in the names, respectively, of William R. Moore and Christian Bockelbrink) were two residences, both fronting west, the front walls of such residences being 55 feet east of the present east line of the Board of Education lot (said east line being the center of Slattery Street as proposed by the aforesaid ordinance).

In June, 1905, the board of education acquired the lot of 94 feet and 11 inches front on St. Louis Avenue, by a depth southwardly of 296 feet and 4½ inches on its west line, by deed from said William F. Hull et al., in which the description of the property conveyed contains the following:

"  . . .  thence eastwardly along the north line of said Lewis' Subdivision to a point where the center line of Slattery Street, as laid out between blocks 1905 and 1896 of the city of St. Louis, intersects the same; thence northwardly, parallel with the east line of said property of the board of education of the city of St. Louis, and P. C. Cozzens, and along the center line of proposed Slattery Street to a point in the south line of St. Louis Avenue . . ."

Before the Hull conveyance, and in, to-wit, 1902, the board of education had acquired a triangular parcel, abutting its first site and the Hull tract on the south thereof, having an area of about 2500 square feet.

In January, 1906, William F. Hull et al. conveyed to William R. Moore the lot, appearing on the exhibit in that name, and abutting on the east of the property previously conveyed to the board of education of the

City of St. Louis, by deed in which is contained the following language:

"  . . . The western 30 feet of this property herein conveyed is at all times to remain open for street purposes with easement, for free ingress and egress for the property lying north and adjacent to the property herein described and owned by Leon L. Hull et al."

In September, 1910, William F. Hull et al. conveyed to Christian Bockelbrink the lot, appearing on the exhibit in that name, and abutting on the east of the property previously conveyed to the board of education, by deed, in which is contained the following language:

"The western 30 feet of the southern 79 feet and $7\frac{1}{4}$ inches herein conveyed, also the 4 feet fronting on St. Louis Avenue, by a depth of 135 feet is at all times to remain open for street and sidewalk purposes with easements for free ingress and egress for the property lying on the south, north and adjacent to the property herein described."

By ordinance of the city of St. Louis, No. 27024, Slattery Street from Montgomery Street to St. Louis Avenue was established 60 feet wide, the center line thereof to run as follows, to-wit: From Montgomery Street northwardly to the northern line of "Lewis' Subdivision," the said line to be coincident with the center line of Slattery Street as now laid out; from the northern line of said subdivision to St. Louis Avenue, the said line to be coincident with the eastern line of property now or formerly owned by the board of education of the city of St. Louis, said property line being located about 280 feet eastwardly of the eastern line of Garrison Avenue, measured along the southern line of St. Louis Avenue.

The original site of the board of education (excluding the private alley area) approximated 30,000 square feet, of which 12,000 square feet were occupied by the school building, leaving approximately 18,000 square feet of adjacent play ground. This condition continued from the time of establishment of the school down to the time of the purchase of the triangular parcel of

2500 square feet in 1902. In 1905 the area added to the school site by the purchase of the Hull property was approximately 28,000 square feet, thus increasing the

area of the school site (outside of the part thereof occupied by the building) to approximately 48,500 square feet; the area of the eastern 30 feet of the present school site included in the proposed Slattery Street as established by said ordinance, approximates 8800 square feet, deducting which from the previous figures would

269 Mo.—28

leave a free area in the school site of approximately 39,700 square feet. The area of the Weisz property, having 85 feet front on St. Louis Avenue and lying in the elbow of the school site, approximately 11,475 square feet, of which the eastern part and area (55-foot street front) of 7425 square feet is unimproved; the last-mentioned area is 84 per cent. of the area of the eastern 30 feet of the school site covered by the proposed street. The proposed street as established by said ordinance would make Slattery Street, now a *cul de sac,* a street through the block to St. Louis Avenue. Slattery Street exists, also, southwardly from Montgomery Street.

As appears from defendant's Exhibit No. 1, there are properties fronting on the *cul de sac* immediately south of the school property and of the property of William R. Moore. The question raised is whether the city of St. Louis in the establishment and extension of a street is unqualifiedly prohibited from including in such proposed street any part of school lands.

The property which is sought to be condemned is the east half of the lot embraced within the heavy black lines shown on said Exhibit "A."

The trial resulted in favor of the defendant, and the city duly appealed the cause to this court.

I. Counsel for appellant state their ground for a reversal of the judgment of the district court in this language:

"(a) Power to condemn for a second public use, property previously devoted to public use, must be expressly granted or proceed from necessary inference of such a grant;

. "(b) This rule proceeds, however, upon the assumption that the later intended public use would destroy or greatly impair the prior use and its object, and is subject to the qualification that when such later use presents a further need of the public and will not essentially interfere with the exercise of the prior use and the accomplishment of its objects, then the power to condemn such property for a second public use will

be inferred from a general grant of the power of eminent domain.''

Upon the other hand, if I correctly understand counsel for appellant, they concede that if such taking would so damage the property as to destroy its usefulness for school purposes, then the city would have no power, in the absence of express statutory authority, to condemn the same for street purposes.

In support of their contention we are cited to the following authorities:

Hannibal v. Railroad, 49 Mo. 480, 481, 482; St. L., H. & K. C. Ry. Co. v. Depot Co., 125 Mo. 82, 91, 92, 94; Suburban Ry. Co. v. Lindell Ry. Co., 190 Mo. 246, 254; Pottsgrove Township Road, 5 Pa. County Court, 361; Rominger v. Simmons, 88 Ind. 453, 456, 457; B. & O. & Chi. R. R. Co. v. North, 103 Ind. 486, 495, 496; Steele v. Empsom, 142 Ind. 397, 405, 406; Easthampton v. County Comrs., 154 Mass. 424, 425, 426; Boston v. Brookline, 156 Mass. 172, 175, 177; In re City of Buffalo, 68 N. Y. 167, 175; L. & N. R. R. Co. v. Louisville, 131 Ky. 108, 115, 116; C. M. & St. P. Ry. Co. v. Starkweather, 97 Iowa, 159, 161, 162, 164, 165; Northwestern T. E. Co. v. C. M. & St. P. Ry. Co., 76 Minn. 334, 346 et seq.; Mobile & G. R. R. Co. v. Ala. M. Ry. Co., 87 Ala. 501; Mobile & G. R. R. Co. v. Ala. M. R. R. Co., 87 Ala. 520; State ex rel. v. Superior Court, 47 Wash., 166; Dillon on Municipal Corporations (5 Ed.), secs. 1020, 1022 (and note), 1023; Lewis on Eminent Domain, secs. 435, 436, 439, 440, 441.

These authorities sustain the general principle contended for by counsel, especially Rominger v. Simmons, 88 Ind. 453; Easthampton v. County Comrs., 154 Mass. 424; Boston v. Brookline, 156 Mass. 172, and In Matter of City of Buffalo, 68 N. Y. 167.

The foregoing contention of appellant is strenuously denied by counsel for the respondent. In his own language, he insists:

''The city of St. Louis has no power to condemn land owned by the board of education of the city of St. Louis actually in use for school purposes. This is true on

principle, and regardless of the area of the property sought to be taken, for:

"(a) Property owned by an instrumentality of the State and devoted to a public use is not subject in any degree to the exercise of the right of condemnation for another and inconsistent purpose in the absence of express legislation so authorizing.

"(b) The doctrine of the law which sometimes, and by way of exception, permits a condemnation of property devoted to public use, but owned by a private corporation, has no application to such a case as this."

A decision of the latter proposition is not necessary to reach a proper disposition of this case, and for that reason we pass it by without further comment.

As regards the first. Can property devoted to a public use, that is more strictly speaking for State purposes, be condemned for other public use, exercised by a municipal corporation? In support of the negative of that question we are cited to the following authorities: Elliott, Roads and Streets, secs. 238, 245; St. L., H. & K. C. Ry. Co. v. Hannibal Depot Co., 125 Mo. 82; Edwardsville v. Madison County, 251 Ill. 265, 37 L. R. A. (N. S.) 101; Moline v. Green, 252 Ill. 475; Matter of Utica, 73 Hun (N. Y.), 256; In re Rosebank Ave., 162 App. Div. (N. Y.) 332; McCullough v. Board of Education, 51 Cal. 418; in re Milwaukee Southern R. R., 124 Wis. 490. Those authorities in effect hold that the power of a city to condemn property for street purposes is limited to private property, and does not extend to property of the State or property held by a subordinate agency of the State, for the State, as distinguished from other corporations.

In our opinion these authorities announce the correct doctrine; and if public policy demands a different rule, the remedy is with the Legislature and not the courts.

We are, therefore, of the opinion that the judgment should be affirmed. It is so ordered.

All concur, *Revelle, J.,* in result, except *Bond, J.,* who dissents.