252 F.2d 354
 CITY OF DAVENPORT, a municipal corporation of the State of
Iowa, and Davenport Bridge Commission, a police
body corporate and politic of the State
of Iowa, Plaintiffs-Appellees,
v.
THREE-FIFTHS OF AN ACRE OF LAND, MORE OR LESS, LOCATED IN
THE CITY OF MOLINE, ROCK ISLAND COUNTY, Illinois, City of
Moline, a municipal corporation of the State of Illinois,
and Unknown Owners, Defendants, City of Moline, a municipal
corporation of the State of Illinois, Appellant.
 No. 12153.
 United States Court of Appeals Seventh Circuit.
 Feb. 27, 1958.
 
 Thomas A. Matthews, Chicago, Ill., John R. Coryn, Moline, .ill., Byron S. Matthews, Chicago, Ill., for defendant-appellant.
 Donald H. Sitz, Davenport, Iowa, Robert G. Graham, Moline, Ill., Charles D. Waterman, Davenport, Iowa, for plaintiffs-appellees, Graham, Califf & Harper, Moline, Ill., Lane & Waterman, Davenport, Iowa, of counsel.
 Before FINNEGAN, SCHNACKENBERG and PARKINSON, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 Congress, through a specific Act,[1] conferred the power of eminent domain on the City of Davenport, an Iowa municipal corporation, and on the Davenport Bridge Commission, a police body corporate, State of Iowa, plaintiff, to acquire land in connection with the enlargement and reconstruction of the Iowa-Illins Memorial Bridge spanning the Mississippi River. Resisting plaintiffs' action filed under Rule 71A, Federal Rules of Civil Procedure, 28 U.S.C., for the acquisition of four parcels[2] of land aggregating approximately three-fifths of an acre in area, the City of Moline, Illinois, defendant, and holder of titles to these parcels, would bar this project by relying, inter alia, on an erroneous interpretation of the Eleventh Amendment to the Constitution. To buttress its position defendant adds a theory that streets and lands owned by an Illinois city are held in trust for the people of the entire state and therefore such parcels are invulnerable to condemnation, under Illinois law, in a federal district court. Defendant would lead us to such result by its assertion that the proceeding is, in essence, a suit against the State of Illinois. But, 'The fact that land is owned by a state is no barrier to its condemnation by the United States.' State of Oklahoma ex rel. Phillips v. Guy F. Atkinson C., 1941, 313 U.S. 508, 534, 61 S.Ct. 1050, 1064, 85 L.Ed. 1487; United States v. Carmack, 1946, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209; United States v. State of South Dakota, 8 Cir., 1954, 212 F.2d 14; State of Missouri ex rel. and to Use of Camden County, Mo. v. Union Electric Light & Power Co., D.C.1930, 42 F.2d 692.
 
 
 2
 Moline failed to file an answer under Rule 71A and instead, interposed its motion to dismiss the complaint and, this pleading, in turn was followed up by plaintiffs' motions for summary judgment. Concluding there as no genuine issue as to any material fact on the question of plaintiffs' power of eminent domain, the district judge correctly entered summary judgment for plaintiffs and, findings of fact and conclusions of law.
 
 
 3
 Some language lurking in Chicago Railway Co. v. City of Chicago, 1920, 292 Ill. 190, 126 N.E. 585, 588 written in the setting of a public utility rate controversy seemingly provides comfort for Moline. But in that Illinois case her Supreme Court was explaining that the City of Chicago, where the utilities' tracks were located, could not affect the exercise of the General Assembly's duty to the general public excuted through the state Public Utility Commission, as it was then named, in the business of regulating fares. Indeed rate-making is traditionally a legislative function and the General Assembly cannot be ousted in the manner contended for in the Chicago case. Only by chop logic could the case be used to argue that the State of Illinois is the sovereign defendant if the condemnation proceedings before us.
 
 
 4
 Nothing in the Constitution prevents Congress from conferring power on these plaintiffs for carrying out the legitimate purpose of acquiring land and building the bridge in question. Congress has declared the aim and policy; plaintiffs bring into actuality the structure over a navigable river at the location specified in the Act. Stockton v. Baltimore & N.Y.R. Co., C.C.N.J.1887, 32 F. 9. See also State of California v. Central Pacific Railroad Company, 1888, 127 U.S. 1, 8 S.Ct. 1073, 32 L.Ed. 150. Our views coincide with those expressed by the district judge when he wrote, inter alia: 'The new span by Congressional limitation must be built adjacent to the existing span and it appears there is no location for the new span within this limitation which would or could avoid the use of publicly-used property. If such publicly-used property cannot be acquired, the new span cannot be built and the Act of Congress providing for the construction is a nullity. For this reason it appears to the Court that this case represents a perfect example of the application of the rule of implied necessity and such rule of implied necessity is hereby applied to this case.' It is unnecessary to marshal an exhaustive line of authorities in support of that common sense approach.
 
 
 5
 Moline's other points, briefed and argued by both sides, concern the element of damages and the problem of alternate routes. Though these items are completely treated by counsel we think, after our study of them, they do not warrant reversal of the judgment appealed.
 
 
 6
 Judgment affirmed.
 
 
 
 [1]
 Plaintiffs constructed the Iowa-Illinois Memorial Bridge in 1935 under a special Act of Congress adopted May 26, 1928. 45 Stat. 761. The 1928 legislation is intimately connected with the General Bridge Act of 1906. 33 U.S.C.A. 491-498. By Public Law No. 566 (66Stat. 734) the 82nd Congress, on July 16, 1952, amended the 1928 Act as follows:
 'That section 7 of the Act approved May 26, 1928, is hereby amended by adding at the end of the section the following: 'Any State or public agency or political subdivision thereof that may have originally constructed said bridge as assignee of the rights, powers, and privileges conferred by this Act, and any State or public agency or political subdivision thereof that may have succeeded to the rights of such assignee and that may have taken over or acquired said bridge, is hereby authorized, and subject to approval of the pertinent plans by the Chief of Engineers and Secretary of the Army, to enlarge and reconstruct said bridge and approaches, including the construction of a separate but adjacent span across the Mississippi River and approaches thereto with interconnections with the original span, and to continue to charge tolls for transit over such bridge as so enlarged and reconstructed, subject to the limitations expressed in section 3 hereof, to provide a fund sufficient to pay the cost of maintaining, repairing, and operating the bridge and its approaches as so enlarged and reconstructed under economical management and to provide a sinking fund to amortize the cost thereof including interest and financing cost, as soon as possible under reasonable charges, but within a period of not to exceed thirty years from the date of completion of such improvements, and after a sinking fund sufficient for such amortization shall have been so provided, such bridge and adjacent span shall thereafter be maintained and operated free of tolls in accordance with such arrangement as may be mutually agreed upon by the public agency or political subdivision then owning said bridge and the State Highway Departments or other appropriate authorities of Iowa and Illinois, and, in connection with any such enlargement and reconstruction of said bridge and approaches thereto, shall have the right and power to enter upon and acquire, condemn, occupy, possess, and use such real estate and other property as may be needed upon making just compensation therefor to be ascertained and paid according to the laws of the State in which such real estate or other property is situated, and the proceedings for such condemnation shall be the same as in the condemnation of private property for public purposes in such State.'
 'Sec. 2. The second sentence of section 5 of the Act approved May 26, 1928, is hereby amended by striking out all of said sentence after the words 'operated free of tolls' and inserting in lieu thereof 'in accordance with such arrangement as may be mutually agreed upon by the public agency or political subdivision then owning said bridge and the State Highway Departments or other appropriate authorities of Iowa and Illinois.'
 'Sec. 3. The right to alter, amend, or repeal this Act is hereby expressly reserved.'
 
 
 [2]
 Title to the land is held by the City of Moline, a municipal corporation of the State of Illinois