STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Relator,

v.

The Honorable Robert G. J. HOESTER, Judge of the 21st Judicial Circuit of Missouri and of Division 8 of the Circuit Court of St. Louis County, Harry Gershenson, S. M. Aronson, and Edward B. Southall, Condemnation Commissioners, Respondents.

No. 49521.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1962.

Rehearing Denied Dec. 11, 1962.

Robert L. Hyder, Samuel C. Ebling, Jefferson City, for relator.

Paul Taub, Overland, Attorney for respondent Judge and for intervenor.

HYDE, Judge.

Relator commenced a condemnation proceeding in the Circuit Court of St. Louis County, in June 1961, for 6.5 miles right of way for a state highway. All required land has been acquired (including 42 parcels condemned) except the property owned

by the Ballwin Fire Protection District (hereinafter called Fire District) which has been permitted to intervene. Separate commissioners were appointed to appraise Fire District's property but, because Fire District had filed a notice of appeal from the order of condemnation, these commissioners were instructed by the court not to proceed.

Relator seeks mandamus to require the court and the commissioners to complete the proceedings. Fire District contends that the State Highway Commission (hereinafter called Commission) has no authority to condemn its property saying it is a political subdivision of the state using this property for governmental functions. (Fire District would be so classed for purposes of taxation under Sec. 15, Art. X, Const.) Of course, if the Commission has no authority to condemn this property, a peremptory writ of mandamus should not be ordered. To expedite the matter we made the following order: "Petition for writ of mandamus sustained. Alternative writ ordered issued returnable to Court en Banc within 30 days because appeal in this case appears to be premature. State ex rel. State Highway Commission v. Hammel, Mo.Sup., 290 S.W. 2d 113. It is further ordered that no possession of property in question be taken pending the final determination of these proceedings."

Returns have been filed by respondents and intervenor and relator has filed motion for judgment on the pleadings. Therefore, the well pleaded averments in the returns will be taken as true and those averments of the petition specifically denied by the returns taken as false. State ex rel. Pontiac Realty Co. v. Nangle, Mo.Sup., 315 S.W.2d 214, 216, and cases cited; see also State ex rel. Reeves v. Brady, Mo.Sup., 303 S.W.2d 22, 23. Fire District says there were denials in the return which raised fact issues but these (so far as briefed) concern the right to appoint the Commissioners which is really a question of law and is so treated. The contention is that there is no right or authority to condemn Fire Dis-trict's property already devoted to a public use and therefore appointment of Commissioners by the court for that purpose could not be valid. Thus decision of the basic issue of the right to condemn will dispose of all contentions made.

Fire District was established under Chapter 321, Secs. 321.010–321.450 (statutory references are to RSMo and V.A.M.S.) and is given authority to exercise the power of eminent domain by Sec. 321.220(10). Its claim is that Commission's authority to condemn is conferred by Sec. 227.120 which after specifying the purposes for which it may condemn in subparagraphs 1–13 states: "If condemnation becomes necessary, the commission shall have the power to proceed to condemn such lands in the name of the state of Missouri, in accordance with the provisions of chapter 523, RSMo 1949, insofar as the same is applicable to the said state highway commission * * *." Therefore Fire District says Sec. 523.100 limits Commission's authority so that it only can condemn for a use that will not materially interfere with the present use being made by it and so would not permit taking Fire District's entire property, as proposed, thus completely destroying the use now made of it. The applicable part of this section is as follows: "In case the lands sought to be appropriated are held by any corporation, the right to appropriate the same by a railroad, telephone or telegraph company shall be limited to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lands." Fire District also cites City of St. Louis v. Moore, 269 Mo. 430, 190 S.W. 867, and Cochran v. Wilson, 287 Mo. 210, 229 S.W. 1050. In the Moore case, we held "the power of a city to condemn property for street purposes is limited to private property, and does not extend to property of the state or property held by a subordinate agency of the state, for the state, as distinguished from other corporations." See note on this case 15 Law Series, U. of Mo. Bulletin 15; and annotation 37 L.R.A.(NS) 101.

**522**

■ However, as stated in 1 Nichols on Eminent Domain, 3rd Ed., 131, Sec. 2.2: "In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor. If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the *'res'* as public property, generally, has no inhibiting influence upon the exercise of the power." Likewise, it is said in 29 C.J.S. Eminent Domain 861–862, § 74 p. 861–862: "As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient; * * *. However, the general rule does not ordinarily apply where the power of eminent domain is being exercised by the sovereign itself, such as the state or federal government, for its immediate purposes, rather than by a public service corporation or a municipality."

This matter was recently considered in Riley v. South Carolina State Highway Department, 238 S.C. 19, 118 S.E.2d 809, 811, in which the court said: "The condemnation here is by the Highway Department as an agency of the State, in behalf of the State and for its own immediate purpose. The condemnor is, in essence, the sovereign. In State Highway Commission v. City of Elizabeth, 102 N.J.Eq. 221, 140 A. 335, 338, the Court said in considering the extent of the power of eminent domain given the State Highway Commission, that it must be borne in mind that the Commission '"is an alter ego of the state" itself' and 'not a mere subordinate.' It was held in Elberton Southern Railroad Co. v. State Highway Department, 211 Ga. 838, 89 S.E.2d 645, 648, that under a general power of condemnation, the Highway Department of Georgia could acquire for public road purposes a part of a railroad right of way and in such a condemnation proceeding 'the State, the sovereign itself, is acting by and through its * * * constituted agency, the State Highway Department.' * * * A public highway cannot in the nature of things be constructed for any considerable distance through an inhabited country without crossing property devoted to some other public use. * * * We conclude that the Highway Department, acting for and in behalf of the State, is empowered to condemn respondents' property even if we regard it as devoted to a public use."

In the New Jersey case cited (140 A. l. c. 336, 337) it is said: "The only question involved here is whether or not lands of a municipal corporation used for public purposes are subject to condemnation by the state highway commission for state highway purposes to the same extent as lands owned by private individuals or corporations. * * * In this connection, it should be borne in mind that the state highway system is 'for the benefit of all citizens, not merely in or for the benefit of any particular locality or the citizens thereof.' * * * All rights and powers of the municipality are derived from the state, and all its property is held subject to the inherent right of the state to appropriate it to public use whenever the public good may require it. The state gave, and the state may take away." See also 18 Am. Jur. 719, Eminent Domain, Sec. 93; Welch v. City and County of Denver, 141 Colo. 587, 349 P.2d 352; In re Elimination of Highway-Railroad Crossing in Village of Altamont, 234 App.Div. 129, 254 N.Y.S. 578, 580, and cases cited, appeal dismissed 259 N.Y. 564, 182 N.E. 182; City of Davenport v. Three-Fifths of an Acre of Land, U.S.C.A. 7th, 252 F.2d 354; United States v. Certain Parcels of Land, D.C., 175 F. Supp. 418.

As noted the Commission condemns "in the name of the state of Missouri" (Sec. 227.120) and, while it is authorized to use the procedure of Chapter 523, it is bound by it only insofar as the same is applicable to it. Our view is that by its very terms Sec. 523.100 is not applicable to the Commission because it is not a railroad, telephone or telegraph company. We have said the Commission, as originally created by legislative enactment (Laws 1921, 1st Ex.Sess. p. 132) was a subordinate branch of the state executive department. State ex rel. McKinley Publishing Co. v. Hackmann, 314 Mo. 33, 282 S.W. 1007, 1010; Bush v. State Highway Commission, 329 Mo. 843, 46 S.W.2d 854, 858. We have also said it was not a state officer nor a political subdivision of the state. Christeson v. State Highway Commission, Mo.Sup., 40 S.W.2d 615. The Commission now has a constitutional status; Sec. 12, Art. IV, establishes a "department of highways," as a part of the state executive department, which Sec. 29 provides "shall be in charge of a highway commission" with "authority over and power to locate, relocate, design and maintain all state highways; and authority to construct and reconstruct state highways, subject to limitations and conditions imposed by law as to the manner and means of exercising such authority." Sec. 30 provides for the use of state highway funds "in the discretion of the commission to locate, relocate, establish, acquire, construct and maintain the following" (naming six classes of state highways, in addition to authority "to complete and widen or otherwise improve and maintain the state system of highways heretofore designated.") We have said "the location and design of highways are matters of policy which are committed solely to the discretion of the Commission." State ex rel. State Highway Commission v. Weinstein, Mo.Sup., 322 S.W.2d 778, 784; see also State ex rel. State Highway Commission v. Elliott, Mo.Sup., 326 S.W.2d 745. Our conclusion is that, since the highways the Commission is authorized to acquire, locate and construct belong to the state and are provided for the use and benefit of all of its citizens, the Commission in condemning right of way for them acts for the state and as the alter ego of the state, so that the taking is by the sovereign. Sec. 29, Art. IV, hereinabove quoted, makes the Commission's broad powers "subject to limitations and conditions imposed by law as to the manner and means of exercising such authority." Therefore, if the General Assembly should ever consider any limitations or conditions necessary it has the authority to impose them.

It was stated at the oral argument that Fire District was constructing a new fire station in another location, to take the place of the one sought to be condemned by the Commission for right of way, so that Fire District's functions could be continued if the Commission's authority to condemn was upheld. Perhaps the parties will be able to agree on time of taking and transfer of facilities with reasonable promptness and with a minimum of inconvenience to all concerned. However our alternative writ of mandamus must be made peremptory and it is so ordered.

All concur.

## On Motion for Rehearing

PER CURIAM.

In the motion for rehearing filed herein, our ruling that Sec. 523.100 is not applicable to the State Highway Commission is claimed to be erroneous. It is argued: "If 523.100 is inapplicable to the Highway Commission merely by reason of the presence in that Section of the words 'railroad, telephone or telegraph company', the same result would necessarily follow as to 523.010 and the entire condemnation procedure for the Highway Commission would collapse and the Highway Commission would have no authority to condemn at all."

However, the Commission gets its authority from Sec. 227.120, which states in 12 separate subparagraphs the many pur-

poses for which it is authorized to condemn lands. Subparagraph 13 covers any other necessary purpose and states "the commission shall have the power to proceed to condemn such lands in the name of the state of Missouri, in accordance with the provisions of chapter 523, RSMo 1949, *insofar as the same is applicable to the said state highway commission.*" This last emphasized clause must be construed as making Sec. 523.100 inapplicable to the Commission because it would be in conflict with many of the purposes stated in Sec. 227.120. For example, according to Fire District's contention, if a corporation owned a filling station on a highway which the Commission decided to widen, it could not condemn the station because (in the language of Sec. 523.100) that would "materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lands." We think it is clear that the purpose of the above-quoted part of 227.-120(13) was to authorize the Commission to use the condemnation procedure provided by Chapter 523; and it also should be noted that Sec. 523.010 is not limited to a "railroad, telephone or telegraph company," as is Sec. 523.100, but includes "other corporation created under the laws of this state for public use."

Furthermore, as to taking lands held by "political subdivisions", it is pertinent to show legislative intent to use, for state highways, property held for other governmental functions, that Sec. 227.130 authorizes them and other public agencies, holding title to real estate, "to give, grant and convey to or for the use of the state highway commission of Missouri such right of ways or other easements and appurtenances in said real estate or property as may be necessary for the proper and economical construction or maintenance of state highways." Our ruling does not mean, as Fire

District suggests, that there are no present limits on the authority of the Commission. For example, see Sec. 227.240 as to pipe lines, public utility lines, etc., construed in State ex rel. State Highway Commission v. Weinstein, Mo.Sup., 322 S.W.2d 778; see also Sec. 227.090. Another example is the Public Service Commission's authority over crossing railroads. Sec. 389.640 discussed in State ex rel. State Highway Commission of Mo. v. Conrad, Mo.Sup., 310 S.W.2d 871.

As to Fire District's contention that by our ruling "that the State Highway Commission is not a political subdivision of the State, but an 'alter ego of the State', such opinion contradicts prior decisions of the Supreme Court", citing Public Water Supply District No. 2 of Jackson County v. State Highway Commission, Mo.Sup., 244 S.W.2d 4, 6, a divisional opinion, which did say the Commission was "a political subdivision of the state" but upheld its authority to require removal of the Water District's installations. That statement therein, which made no difference in that decision, was incorrect because the Court en Banc, in State ex rel. McKinley Publishing Co. v. Hackmann, 314 Mo. 33, 282 S.W. 1007, 1010, had previously held the Commission was a subordinate branch of the state executive department; and this has been confirmed by Secs. 12, 29–34, Art. IV, 1945 Constitution, V.A.M.S. As to what is a political subdivision of the state, see Sec. 15, Art. X, Const.; Kansas City v. Neal, 122 Mo. 232, 234, 26 S.W. 695; Wilson v. King's Lake Drainage & Levee District, 237 Mo. 39, 48, 139 S.W. 136; Stribling v. Jolley, 362 Mo. 995, 245 S.W.2d 885, 889. We further note again that Sec. 227.-120(13) states the Commission's power is "to condemn such lands in the name of the state of Missouri."

The motion for rehearing is overruled.