STATE ex rel. MARYLAND HEIGHTS
FIRE PROTECTION DISTRICT, a
political subdivision, Relator,

v.

Honorable Robert L. CAMPBELL,
Judge, Circuit Court, St. Louis
County, Respondent.

No. 69094.

Supreme Court of Missouri,
En Banc.

Sept. 15, 1987.

Rehearing Denied Oct. 13, 1987.

Daniel P. Card, II, Chester A. Love, St. Louis, for relator.

Thomas W. Wehrle, County Counselor, Patricia Redington, Asst. County Counselor, Clayton, for respondent.

HIGGINS, Judge.

The Maryland Heights Fire Protection District seeks to prevent the condemnation of its property by the St. Louis County Director of Highways and Traffic and the St. Louis County Counselor. Relator Fire District contends that Judge Campbell is without jurisdiction to hear the condemnation proceeding because the County cannot take property owned by another political subdivision already devoted to public use. The Court holds under the facts of this case that St. Louis County does have the authority to condemn the property in question and, accordingly, quashes its preliminary order in prohibition.

Relator is a political subdivision located within St. Louis County, created and established pursuant to the provisions of Chapter 321, RSMo. The County's petition in condemnation sought to condemn forty-three parcels of land for the purpose of widening and improving Schuetz Road and Dorsett Road within the county. One of the affected parcels is a 16,183 square foot tract of land owned and used by relator. Of this tract St. Louis County sought to acquire a perpetual right-of-way easement on 1624 square feet (approximately ten percent of the District's land) and a temporary construction and sloping license on 1589 square feet.

Relator filed a motion to dismiss the petition in condemnation contending that the County's authority to condemn was limited to private property and that the County lacked jurisdiction or authority to condemn property already dedicated and held for public use; that the county lacks jurisdiction to condemn public property owned by a political subdivision exercising police powers of the state; and that the county's enabling ordinances are insufficient to permit the acquisition of the land because the ordinance refers only to the condemnation of "private" property. Relator does not

contend that the proposed taking would materially impair or interfere with relator's use of this property as a fire protection district.

Judge Campbell indicated his intention to overrule relator's Motion to Dismiss: relator sought a writ of prohibition in the court of appeals to stop the condemnation proceeding; the appellate court denied the writ. Relator subsequently filed its petition before this Court; a preliminary order in prohibition issued. Respondent has filed a Motion to Dismiss the petition in prohibition, and the issues there presented will be resolved by this opinion.

■ The general rule is that public property held by a political subdivision cannot be acquired by another political subdivision if the proposed use will totally destroy or materially impair or interfere with the former use. *Kansas City v. Ashley*, 406 S.W.2d 584 (Mo.1966); *City of Blue Springs v. Central Development*, 684 S.W.2d 44 (Mo.App.1984). The logical corollary of this rule is that if the proposed use does not totally destroy or materially impair or interfere with the existing use, the public property can be acquired by another political subdivision to further serve a public purpose without express authority by the legislature. The cases do not conflict with this statement of law.

In *Ashley*, this Court refused to permit Kansas City to condemn a railroad right-of-way in order to widen city streets because the taking would have materially impaired the railroad's use of its land in the performance of its function. The Court noted that the area to be condemned extended longitudinally along the railroad right-of-way and no provisions were made for the railroad to use the street for railroad purposes. Therefore, the city was denied the property based on the exception of material impairment of the existing use. The rule was clearly stated as follows:

"[P]roperty already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been

manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient,".... *Ashley*, 406 S.W.2d at 589.

In *City of Blue Springs*, the city petitioned to condemn land in order to construct a water system. The court held the landowner had not sufficiently established an existing public use so as to preclude the city's right to condemn the land. *City of Blue Springs*, 684 S.W.2d at 50. Thus, the city was permitted to proceed with condemnation. Once the court initially determined that there was no public use, general authority for the city to condemn was sufficient.

Relator argues that *City of St. Louis v. Moore*, 269 Mo. 430, 190 S.W. 867 (1916), sets the standard for condemnation of public property; however, *Moore* is distinguishable. *Moore* involved an attempt by the City of St. Louis to condemn public school land for the purpose of constructing new streets. The author of the opinion posed the question, "Can property devoted to a public use, that is, more strictly speaking, for state purposes, be condemned for other public use, exercised by a municipal corporation?" *Id.* 190 S.W. at 867. The author answers that question in the negative stating, "The power of a city to condemn property for street purposes is limited to private property, and does not extend to property of the state or property held by a subordinate agency of the state, for the state, as distinguished from other corporations." *Id.* at 867. *Moore* recognized that the powers involved were those of a city, a municipal corporation, attempting to take the property of a state, the public school system, for city purposes.

■ The situation presented in *Moore* is similar to that presented in *State v. Hoester*, 362 S.W.2d 519 (Mo. banc 1962). In *Hoester*, the State Highway Department sought to condemn land owned by the Ballwin Fire Protection District, a municipal power. *Hoester* states the general rule requiring express legislative authority when the taking for public use will destroy or materially impair or interfere with the

former public use and states further that "the general rule does not ordinarily apply where the power of eminent domain is being exercised by the sovereign itself, such as the state or federal government, for its immediate purposes, rather than by a public service corporation or municipality." *Hoester*, 362 S.W.2d at 522, citing 29 C.J.S. Eminent Domain 861–862, section 74 (1965). Thus, the sovereign may take by eminent domain without express legislative authority regardless of impairment of public purposes.

■ Here, unlike the powers in *Moore* and *Hoester*, the condemnor and condemnee stand on equal ground. They are both political subdivisions. The Maryland Heights Fire Protection District cannot claim the arm-of-the-state status of the public schools of *Moore*. The public school system is established by the state and is regulated by the state. The fire district is established and organized at the city level. Here two political subdivisions are vying for the use of an area of land to be devoted to street improvement. Because the proposed use is not shown to be inconsistent with or a material impairment of the already existing use, the County should be permitted to proceed with the condemnation.

Relator argues that the fire district is imbued with the power of the state and is superior to other political subdivisions or municipalities. In support of this proposition it cites *R.A. Vorhof Construction Co. vs. Blackjack Fire Protection District*, 454 S.W.2d 588 (Mo.App.1970). In that case the court held that an ordinance of the fire protection district was not an unreasonable exercise of power to ensure the safety of the community. The court recognized the superiority of the fire district in the field of fire protection stating that "its powers in this field by reason of state legislative delegation are preeminent and must prevail over a school district." *Id.* at 594.

Here there is no dispute of the fire district's preeminence in matters of fire safety. No allegation has been made that the street improvement will hamper the district fire fighting responsibility in any way.

Thus, the district has no special superiority over other political subdivisions in this case.

Soon after *Moore* was written it was the subject of an article printed by the University of Missouri Law Series. The author criticized the case to the extent that it may be interpreted to hold that express authority from the legislature is necessary to condemn property of the state or property held by a subordinate agency of the state. 15 L.Ser., Univ.Mo. Bull.15, vol. 18, num. 14 (June 1, 1917). The author noted that although it is important that public property have some protection from an endless series of condemnation for first one purpose and then another, the principles of the general rule safeguard against such situations by requiring that the two uses are able to coexist. He stated further that "[a] balancing and adjustment of conflicting public interests is demanded by public convenience and necessity whenever practicable, and may well be presumed to have been contemplated by the legislature in conferring the power upon a city to condemn property for the purpose of constructing streets." *Id.* at 18.

Relator further argues that no statute or ordinance gives St. Louis County the right to condemn public property. The power of the County to condemn land comes from four sources: The Missouri Constitution, article VI, section 16; sections 49.300 and 228.100, RSMo; the St. Louis County Charter, article II; and the County's enabling ordinances. Three of these sources do not distinguish between the condemnation of private property and public property. Section 49.300 grants the county the authority to appropriate "land or other property" for public purposes. Section 228.100 directs the prosecuting attorney to institute condemnation proceedings in the name of the county if "any person" or "owner" does not or cannot relinquish the right-of-way for a public road.

■ In this case where the legislature has granted the right to appropriate "land or other property," the Court can conclude that the legislature meant exactly what it said and need not read the grant to mean

"private land or other property." It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible. Section 1.090, RSMo 1986; *Hinds v. Kircher*, 379 S.W.2d 607 (Mo. banc 1964). Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature. *In re Tompkins Estate*, 341 S.W.2d 866 (Mo. banc 1961). There is no logical reason to limit the acquisition of property between two political subdivisions where the two uses are not inconsistent and both uses serve the public purpose.

■ Finally, relator asserts that the three enabling ordinances authorizing the Schuetz and Dorsett Road improvements permit the taking of "private" property and do not mention public property. Each ordinance provides:

The Director of Highways and Traffic and the County Counselor are hereby authorized and directed to acquire by negotiation, purchase, gift, condemnation or otherwise all private property or license in property necessary to open, widen, establish, construct, reconstruct, and improve said road including the acquisition of such temporary sloping, drainage, demolition and construction licenses and easements necessary for construction purposes, the cost of said acquisition to be charged in accordance with St. Louis County.

The County urges that the word "private" was inadvertently included in the ordinance. It is clear that the St. Louis County Council in its intention to widen Schuetz Road intended also that the portion owned by the Fire District be included.

The ordinances include a description of that area authorizing the county executive to execute contracts, agreements and other documents for the acquisition of the land. In oral argument before this Court the county's attorney admitted the inadvertent inclusion of the word "private" and requested that the county be permitted to present the ordinance to the County Council to be rewritten in accordance with the Council's intended purpose.

This Court will not interpret the ordinance so as to reach an absurd result contrary to its clear purpose.

Accordingly, the County is granted the opportunity to cure the ordinance deficiency by amendment, *City of Blue Springs*, 684 S.W.2d at 48; and, if so, to proceed with its condemnation. Respondent's Motion to Dismiss the Petition for Prohibition is sustained and the preliminary order in prohibition is quashed.

BILLINGS, C.J., and BLACKMAR, DONNELLY, WELLIVER and ROBERTSON, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

RENDLEN, Judge, dissenting.

I would make the preliminary order in prohibition absolute. The power of the County to condemn property for street use does not extend to property of the State or property held by a subordinate agency of the State where the condemnor and condemnee enjoy equal status in the governmental hierarchy except under special circumstances not present in this case.

The principal opinion correctly acknowledges "the condemnor and condemnee stand on equal ground. They are both political subdivisions." Thus one political subdivision (the County) seeks to condemn the land of another political subdivision (the Fire District) notwithstanding the fact the property has previously been dedicated to and is now held for public use by the Fire District. The majority points to those cases in which a condemnor (*e.g.* the State) with higher standing in the structure of government has been permitted to reach down the governmental chain and take by eminent domain the property of a lower ranking political entity. While this may be permissible in those instances, such is not the case before us; instead we consider here property previously devoted to public use by a competing public entity of equal rank. Certainly before the law should be altered to permit the result sought here, the condemning entity (County) must continue to bear the duty of demonstrating

there will not be a material impairment of the existing use or that the use sought of the condemned property is not inconsistent with that currently enjoyed by the Fire District.

For reasons unclear and difficult to understand the majority throws this burden on the Maryland Heights Fire Protection District. The County has not alleged in the pleadings, much less proven, that the proposed use would not interfere with the existing use of the land by the Fire District. The Fire District is entitled at the very least to continue the control and use of its land, which by previous condemnation proceedings or by grant has been obtained for its purposes as a public entity, until the County has borne its burden of pleading a proper cause of action sufficient to establish jurisdiction in the circuit court.

Not only does the majority misplace the burden of establishing impairment of the existing use, it implicitly adopts a definition of impairment which I believe is inconsistent with the precedent upon which it relies, and which allows the County to take the Fire District's land so long as the District can continue to carry out its firefighting responsibilities. By doing so the majority subtly imposes on the Fire District the burden of proving its use of the land is not only legitimate and in furtherance of its obligations to the public, but is vital to the fulfillment of its public purpose.

The great mischief produced by this holding is readily apparent when we consider that it opens the door for suits hereafter by the Fire District or other political subdivisions to condemn on their behalf property devoted for street purposes in the County. The power of condemnation is an awesome one in regard to which this Court should exercise extreme caution and not the casual approach by which the majority disturbs the established principles of law involved in cases of this kind. For the reasons assigned, I respectfully dissent.