### UNITED STATES of America
### v.
### CERTAIN PARCELS OF LAND IN KNOX COUNTY, TENNESSEE, Highland Memorial Cemetery, Inc., et al.
### Civ. A. No. 3704.

United States District Court
E. D. Tennessee, N. D.
Aug. 5, 1959.

---

John C. Crawford, Jr., U. S. Atty., Knoxville, Tenn., for plaintiff.

Clyde W. Key, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This matter was recently argued and the Court, after indicating to counsel its views, took the matter under consideration and at the same time advised counsel that a memorandum would be filed stating in more detail and with finality the conclusions reached. This memorandum is filed pursuant to that understanding.

Under the authority of 40 U.S.C.A. §§ 257 and 258a to 258e and the Federal-Aid Highway Act of 1956, 70 Stat. 374, 23 U.S.C.A. § 101 et seq., the United States of America has filed this action to take, under power of eminent domain, certain parcels of land in Knox County, Tennessee, belonging to the Highland Memorial Cemetery Corporation to be used for the construction of a portion of the National System of Interstate and Defense Highways. This Court entered judgment on Declaration of Taking on October 9, 1958.

On November 5, 1958, the defendant filed an answer denying the right of the United States to acquire lands through the exercise of the power of eminent domain for the reason that it was authorized and contemplated in the Highway Act of 1956 that the lands taken would immediately be conveyed to the State in which same were situated or to some political subdivision thereof. It alleges that the lands in suit are used for the burial of the dead and that the taking of lands by the United States for the purpose of conveying them to a political subdivision of the State of Tennessee is not for a public use.

Subsequently, and pursuant to motion by the Government, the Court on March 25, 1959 entered an order for delivery of possession. Upon motion of Highland Memorial Cemetery, this order was vacated on April 2, 1959, pending determination by the Court of plaintiff's right to acquire said lands. In the order the plaintiff was given the right to renew at

any time its application for an order of possession.

The lands sought to be taken are not presently used for burial purposes but it is the owner's intention to use them in the future for such purposes.

Defendant concedes in its brief that the power of eminent domain in the Federal Government exists as an attribute of sovereignty; and concedes further that the last clause of the Fifth Amendment of the Constitution, to-wit, "nor shall private property be taken for public use, without just compensation" is an implied recognition of that power. But it argues that under that section of the Fifth Amendment, the taking for right-of-way use of land dedicated to cemetery purposes is not a "public use" for which the Federal Government may constitutionally use its power of eminent domain.

Defendant argues that the State of Tennessee does not have the power to acquire through condemnation lands previously dedicated to cemetery use and to divert said lands to the construction of public highways. In support it cites the well known case of Memphis State Line Railroad Company v. Forest Hill Cemetery Company, 116 Tenn. 400, 94 S.W. 69. It quotes at length from the concurring opinion of Justices Wilkes and Shields, but as we read the majority opinion the case does not hold that a cemetery is inviolate. What the case does say is that in view of special statutes policing cemeteries against unseemly intrusion, the general statute on eminent domain without more is ineffectual for the taking of a railway right of way through a portion of property dedicated to cemetery use. We quote the following from the majority opinion at page 419 of 116 Tenn., at page 73 of 94 S.W.:

" * * * True it is the dead must give place to the living. In process of time their sepulchers are made the seats of cities, and are traversed by streets, and daily trodden by the feet of man. This is inevitable in the course of ages. But while these places are yet within the memory and under the active care of the living, while they are still devoted to pious uses, they are sacred, and we cannot suppose that the legislature intended that they should be violated, *in the absence of special provisions upon the subject, authorizing such invasion, and indicating a method for the disinterment, removal, and reinterment of the bodies buried, and directing how the expense thereof shall be borne.*" (Emphasis added).

Defendant cites a number of other cases which stand for the general principle that property devoted to a public use, selected and set apart by proper legislative authority, cannot be taken for another and inconsistent public use *in the absence of legislation expressly or impliedly unwarranting it.* In Southern Ry. Co. v. City of Memphis, 126 Tenn. 267, 148 S.W. 662, 41 L.R.A.,N.S., 828, a condemnation by the City of Memphis for city park purposes of land used by the Southern Railway Company as switchyards was approved by the Court because the legislation so contemplated.

It is our understanding that these cases hold that, if the legislation specifically contemplates, land dedicated to one public use may be condemned for an inconsistent public use. And defendant's position that the State of Tennessee has no power to condemn lands previously dedicated to cemetery purposes is weakened rather than strengthened by these and other cases it has cited. Perhaps the authority does not exist under the general statute on condemnation, but the Forest Hill and other cases indicate the Legislature has the power to pass special legislation authorizing such condemnation.

Defendant then argues that the Federal Government may not constitutionally do what the State lacks the power to do, by using its own power of condemnation to condemn the cemetery and then conveying the lands thus acquired to the State. Counsel for the defendant cites no authority for this proposition; and it is, as indicated, based upon the unjusti-

fied assumption that the State lacks the power to condemn cemetery property for another public use. Lack of power to condemn and lack of authority to condemn under existing statutes are entirely different matters. Under the authority of the Forest Hill case it appears that the State has the basic power to condemn land dedicated to cemetery use, even though that power be not at this time implemented by specific legislation.

But if we are mistaken in this view, it is to be noted that the condemnation in this case was initiated by the Federal Government, rather than by the State of Tennessee, to procure lands for a section of the National System of Interstate and Defense Highways, certain provisions for which appear as Sec. 108 et seq., of the Federal-Aid Highway Act of 1956, (70 Stat. 378). In sub-section (a) of Sec. 108, it was

> " * * * declared to be essential to the national interest to provide for the early completion of the 'National System of Interstate Highways,' as authorized and designated in accordance with section 7 of the Federal-Aid Highway Act of 1944 (58 Stat. 838). It is the intent of the Congress that the Interstate System be completed as nearly as practicable over a thirteen-year period and that the entire System in all the States be brought to simultaneous completion. *Because of its primary importance to the national defense, the name of such system is hereby changed to the 'National System of* Interstate and Defense Highways!" (Emphasis added).

This section was amended by the 1958 Acts, 23 U.S.C.A. § 101(b) to read:

> "*It is hereby declared to be in the national interest to accelerate the construction of the Federal-aid highway systems, including the National System of Interstate and Defense Highways, since many of such highways, or portions thereof, are in fact inadequate to meet the needs of local and interstate commerce, for the na-*

*tional and civil defense.*" (Emphasis added).

which amendment strengthened the declaration of the importance of the System of Interstate and Defense Highways to the national and civil defense.

The above quoted sections of the Federal-Aid Highway Act of 1956, as amended, leave no doubt in the Court's mind that national defense is deeply involved in the National System of Interstate and Defense Highways. And in the opinion of the Court this interest of the Federal Government in the national defense continues of the utmost importance regardless of the channels ultimately used for the administration of this road system. This view is supported by language in Sec. 258a of Title 40 to (Sec. 109(a) (1) of the Federal-Aid Highway Act of 1956) to the effect that when requested by a State, "the Secretary of Commerce is authorized, in the name of the United States, and prior to approval of title by the Attorney General, to acquire, enter upon, and take possession of such lands or interests in land by * * * condemnation, or otherwise, in accordance with the laws of the United States * * *, if * * * the Secretary of Commerce has determined that such State is unable to acquire necessary lands * * * or is unable to acquire such lands * * * with sufficient promptness; * * * ."

Such a determination was made by B. D. Tallamy, Federal Highway Administrator, acting pursuant to delegation of authority from the Secretary of Commerce, and is made a part of the record in this case.

■ If defendant is correct that the condemnation of a cemetery is contrary to existing policy in the State of Tennessee, then the State could not exercise condemnation rights without special enabling legislation. The Court is of the opinion that Congress has by the language quoted above, expressly vested in the Secretary of Commerce the power to take possession of lands needed under the Federal-Aid Highway Act of 1956,

and in authorizing such powers contemplated the situation we have here—either that the State is unable to acquire the lands or cannot do so promptly.

The Federal Government undoubtedly possesses that power in aid of the National System of Defense Highways. United States v. Carmack, 329 U. S. 230, at page 236, 67 S.Ct. 252, at page 255, 91 L.Ed. 209, where the Court said:

"The power of eminent domain is essential to a sovereign government. If the United States has determined its need for certain land for a public use that is within its federal sovereign powers, it must have the right to appropriate that land. Otherwise, the owner of the land, by refusing to sell it or by consenting to do so only at an unreasonably high price, is enabled to subordinate the constitutional powers of Congress to his personal will. The Fifth Amendment, in turn, provides him with important protection against abuse of the power of eminent domain by the Federal Government."

In United States v. Gettysburg Electric R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L. Ed. 576, the question arose whether the Federal Government might take, for the preservation of the lines of battle at Gettysburg, lands of a railroad company. The Court said at page 685 of 160 U.S., at page 431 of 16 S.Ct.,

"* * * The defendant in error concedes, what is without doubt true, that this is a question of intention, simply. The power of congress to take land devoted to one public use for another and a different public use upon making just compensation, cannot be disputed. Upon looking at the two acts of congress and the joint resolution of June 6, 1894, above referred to, in the latter of which it is stated, 'There is imminent danger that portions of said battlefield may be irreparably defaced by the construction of a railway over the same, thereby making impracticable the execution of the

provisions of the act of March 3, 1893,' we think it is plainly apparent that congress did intend to take this very land occupied and used by this company for its railroad."

In Berman v. Parker, 348 U.S. 26, at page 33, 75 S.Ct. 98, at page 103, 99 L. Ed. 27, in a case involving the condemnation by an agency established by Congress of lands for purposes of slum clearance and redevelopment, the Court said:

"*Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear.* For the power of eminent domain is merely the means to the end. See Luxton v. North River Bridge Co., 153 U.S. 525, 529–530, 14 S.Ct. 891, 892, 38 L.Ed. 808; United States v. Gettysburg Electric R. Co., 160 U.S. 668, 679, 16 S.Ct. 427, 429, 40 L.Ed. 576. *Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine.* Here one of the means chosen is the use of private enterprise for redevelopment of the area. Appellants argue that this makes the project a taking from one businessman for the benefit of another businessman. But the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established. See Luxton v. North River Bridge Co., supra; cf. Highland v. Russell Car & Snowplow Co., 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688." (Emphasis supplied).

Since national defense is involved it is not material what disposition be made of the land taken. United States v. Forbes, D.C.M.D.Ala., 259 F. 585, at page 591, in which the Court said:

"The claim is made by the defendant that the Secretary of War has some agreement with the city of Montgomery to turn this property over to the city upon the happening of some contingency. Answering this claim, it is apparent, from what

has been said, that the Secretary of War had the legal right to condemn the fee in this land because in his judgment he had determined that the fee was necessary, and Congress in its wisdom had given him the right, and imposed on him the duty, of making this final determination, and he has performed such duty. The United States government, when these damages are fixed and paid, will own the fee in the land. *What final disposition may be made of this land in one year, ten years, or a hundred years from now is no more concern to the defendant than any other citizen of the United States."* (Emphasis supplied).

In the recent case of United States v. 93.970 Acres of Land, 360 U.S. 328, 79 S.Ct. 1193, 1196, 3 L.Ed.2d 1275, the Court, in response to a contention that Illinois law applied, said, "We have often held that where essential interests of the Federal Government are concerned, federal law rules unless Congress chooses to make state laws applicable." It is apparent no such choice was made here. See also Vol. 18 Am. Jur.—(Eminent Domain) Secs. 17 and 18.

See also, In re Condemnations for Improvement of Rouge River, D.C.E.D. Mich., 266 F. 105, 116–117.

We must conclude that state policy with reference to cemeteries, whatever it may be, is not controlling. The Federal-Aid Highway Act of 1956 makes it clear that these lands are being taken for highways to be used in the national defense. The authority of the Federal Government to condemn for that purpose is unquestioned. Since a national interest is involved, it is immaterial whether the Federal Government utilizes its own power of condemnation or that of the State. The national interest, as outlined by the Congress in Section 108(a) of the Act, and in the amendments thereto, must be served, and the Court reinstates its order for delivery of possession here-

tofore entered on March 25, 1959 when an order is filed putting into execution the views here set forth.

Let an order be presented.