[L. A. No. 26983. In Bank. Apr. 16, 1963.]

EDEN MEMORIAL PARK ASSOCIATION et al., Plaintiffs and Appellants, v. THE DEPARTMENT OF PUBLIC WORKS et al., Defendants and Respondents.

Sandler & Rosen, Nelson Rosen and Thorpe, Sullivan, Clinnin & Workman for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, N. B. Peek and Don G. Kircher, Deputy Attorneys General, George C. Hadley, George W. Miley, Charles E. Spencer, Jr., and Robert E. Reed for Defendants and Respondents.

Ramsey Clark, Assistant Attorney General (United States) and Roger P. Marquis as Amici Curiae on behalf of Defendants and Respondents.

TRAYNOR, J.—In this action Eden Memorial Park Association and one of its directors in his capacity as a taxpayer seek to enjoin the Department of Public Works and state officials from constructing a freeway across land that Eden dedicated exclusively for cemetery purposes. The parties submitted the case on a stipulation of facts, and the trial court entered judgment for defendants. Plaintiffs appeal.

Defendants planned to construct the freeway in question as part of the National System of Interstate and Defense Highways pursuant to contracts with the United States. The California Highway Commission authorized the condemnation of approximately 12 acres of Eden's cemetery, and the Department of Public Works filed a condemnation action and secured an order for immediate possession. There have been no burials in the land involved. In *Eden Memorial Park Assn.* v. *Superior Court,* 189 Cal.App.2d 421 [11 Cal.Rptr. 189], the court annulled the order for immediate possession and prohibited further proceedings in the condemnation action on the ground that Health and Safety Code sections 8560[1] and 8560.5[2] precluded condemning Eden's land for the freeway. Defendant Womack, the State Highway Engineer, then requested the authorized representative of the United States Secretary of Commerce to have the United States acquire the land. The United States filed a condemnation action against Eden in the United States District Court and secured

---

[1] "After dedication pursuant to this chapter, and as long as the property remains dedicated to cemetery purposes, no railroad, street, road, alley, pipe line, pole line, or other public thoroughfare or utility shall be laid out, through, over, or across any part of it without the consent of the cemetery authority owning and operating it, or of not less than two-thirds of the owners of interment plots."

[2] "No streets, alleys, or roads shall be opened or laid out within the boundary lines of any cemetery located in whole or in part within the lines of any city or city and county, where burials in the cemetery have been had within five years prior thereto, without the consent of the person owning and controlling the cemetery."

an order for immediate possession. This order was not appealable. After the federal action was filed, plaintiffs commenced this action. Thereafter the United States District Court enjoined Eden from prosecuting it on the ground that Eden was seeking to interfere with rights the United States acquired pursuant to the order for immediate possession. Eden appealed, and the United States Court of Appeals reversed. (*Eden Memorial Park Assn.* v. *United States,* 300 F.2d 432.) It held that any judgment entered against the defendants in this action could not affect the rights of the United States in the federal condemnation action and that therefore the District Court should not have enjoined prosecution of this action. On that appeal, however, the Court of Appeals declined to pass on the validity of the federal taking. It stated:

"In our opinion the prospect of expediting the disposition of litigation is not a sufficient end in itself to warrant advance consideration of issues which are normally reserved for disposition on final appeal. In this case, moreover, there are other considerations which argue against the unnecessary advance review of the question of validity.

"Under the Federal-Aid Highways Act, which provides the statutory authority for this taking, the only purpose for which the land may be acquired is to transfer it to the state so that the state can construct and maintain a highway thereon. If, by reason of the decision in the pending state case a cloud is thrown over the authority and obligation of the state to accept such a transfer and so utilize the land, the United States may desire to know it before the taking becomes irrevocable, assuming that it has not already become so.

"Apart from the possible desire of the United States in this regard, the district court might itself desire to re-examine its determination as to validity in the light of any such state adjudication. If, for its own purposes, or to accommodate the United States, the district court should determine to postpone the entry of a final decree in the condemnation proceedings pending such state adjudication, this would be an altogether proper exercise of judicial discretion." (300 F.2d at pp. 439-440.)

Presumably for the foregoing reasons the federal action has not yet been brought to trial, and there has therefore been no final federal adjudication of the legality of any of the official actions challenged in this case. ■ Accordingly,

we must determine whether defendants herein lawfully invoked the power of the United States to secure possession of the land necessary to complete the freeway after it was determined in *Eden Memorial Park Assn.* v. *Superior Court, supra,* that the land could not be condemned under state law.

The Federal-Aid Highways Act provides:

"(a) In any case in which the Secretary [of Commerce] is requested by a State to acquire lands or interests in lands (including within the term 'interests in lands', the control of access thereto from adjoining lands) required by such State for right-of-way or other purposes in connection with the prosecution of any project for the construction, reconstruction, or improvement of any section of the Interstate System, the Secretary is authorized, in the name of the United States . . . , to acquire, enter upon, and take possession of such lands or interests in lands by purchase, donation, condemnation, or otherwise in accordance with the laws of the United States . . . , if—

"(1) the Secretary has determined either that the State is unable to acquire necessary lands or interests in lands, or is unable to acquire such lands or interests in lands with sufficient promptness; and

"(2) the State has agreed with the Secretary to pay, at such time as may be specified by the Secretary an amount equal to 10 per centum of the costs incurred by the Secretary, in acquiring such lands or interests in lands. . . .

"The authority granted by this section shall also apply to lands and interests in lands received as grants of land from the United States and owned or held by railroads or other corporations.

"(b) .    .    .    .    .    .    .    .    .    .    .    .

"(c) The Secretary is further authorized and directed by proper deed . . . to convey any such lands or interests in lands acquired in any State under the provisions of this section, except the outside five feet of any such right-of-way in any State which does not provide control of access, to the State highway department of such State or such political subdivision thereof as its laws may provide. . . . Whenever the State makes provision for control of access satisfactory to the Secretary, the outside five feet then shall be conveyed to the State by the Secretary, as herein provided.

"(d) Whenever rights-of-way, including control of access, on the Interstate System are required over lands or interests

in lands owned by the United States, the Secretary may make such arrangements with the agency having jurisdiction over such lands as may be necessary to give the State . . . adequate rights-of-way and control of access thereto from adjoining lands. . . .'' (23 U.S.C.A. § 107.)

Plaintiffs contend that the foregoing provisions of section 107 of the federal act should be interpreted in the light of the purpose of that act to assist the states in highway construction within the framework of their own laws and that so interpreted the section does not authorize the Secretary of Commerce to override basic state policies governing highway locations. They invoke Senate and House reports and debates that emphasized the primary role of the states in locating and constructing federally assisted highways (Senate Report No. 1965, 2 U.S. Code Congressional and Administrative News, 84th Cong., 2nd Sess., 1956, p. 2825; House of Representatives Report No. 2022, 84th Cong., 2nd Sess., 1956, pp. 11-14; 101 Cong. Rec., 84th Cong., 1st Sess., 1955, pp. 6712, 6718-6719, 6784, 6786, 6788), and seek to draw a distinction between a state's inability to acquire land resulting from procedural deficiencies in its condemnation law and such inability resulting from established policies to favor some uses over others.

Section 107 makes no such distinction, however, for it authorizes the Secretary to act on the request of a state in "any case in which" he "has determined . . . that the State is unable to acquire necessary lands or interests in lands." Moreover, any attempt to determine underlying policies of state law by distinguishing between self-imposed procedural and substantive limitations on a state's power to condemn is illusory. A state policy to favor one use over another may be reflected either in a failure to provide an applicable condemnation procedure or in an express limitation on an otherwise fully implemented power. The choice of method sheds little or no light on the strength of the state policy involved.

In determining the extent to which section 107 permits the subordination of otherwise applicable state policies, it bears emphasis that the section does not apply to the Federal-aid primary system or to the Federal-aid secondary system assisted under the Federal-Aid Highways Act, but only to the National System of Interstate and Defense Highways. (23 U.S.C.A. § 103.) As to this system the act states, "It is

hereby declared that the prompt and early completion of the National System of Interstate and Defense Highways, so named because of its primary importance to the national defense and hereafter referred to as the 'Interstate System,' is essential to the national interest and is one of the most important objectives of this Act. It is the intent of Congress that the Interstate System be completed as nearly as practicable over the period of availability of the thirteen years' appropriations authorized for the purpose of expediting its construction, reconstruction, or improvement . . . and that the entire System in all States be brought to simultaneous completion. Insofar as possible in consonance with this objective, existing highways located on an interstate route shall be used to the extent that such use is practicable, suitable, and feasible, it being the intent that local needs, to the extent practicable, suitable, and feasible, shall be given equal consideration with the needs of interstate commerce." (23 U.S.C.A. § 101, subd. (b).)

In seeking a reasonable balance between local and national needs with respect to the Interstate System, section 107 does not put generally applicable local policies governing condemnation ahead of the needs of the Interstate System. (*United States* v. *Certain Parcels of Land,* 209 F.Supp. 483, affd., *United States* v. *Pleasure Driveway & Park District of Peoria, Illinois,* 314 F.2d 825; *United States* v. *Certain Parcels of Land,* 175 F.Supp. 418.) It does, however, protect local interests by requiring that the state request any action by the Secretary pursuant to its terms.

Plaintiffs contend, however, that the Legislature did not authorize the State Highway Engineer to act for the state in requesting the Secretary of Commerce to acquire Eden's land. There is no merit in this contention.

Section 820 of the Streets and Highways Code provides: "The State of California assents to the provisions of the Federal Highway Act, as amended and supplemented. All work done under the provisions of said act or other acts of Congress relative to federal aid, or other cooperative highway work, or to emergency construction of public highways with funds apportioned by the Government of the United States, shall be performed as required under acts of Congress and the rules and regulations promulgated thereunder. Laws of this State inconsistent with such laws, or rules and regula-

tions of the United States, shall not apply to such work, to the extent of such inconsistency.''

Section 820.5 provides: ''The department [Department of Public Works] may enter into agreements with authorized officials of the United States for the performance of street or highway construction, improvement, or maintenance projects, including the acquisition of necessary rights of way therefor, for military, naval, access and tactical highways, including highways providing access to timber or other natural resources, regardless of whether or not such highways are on the State Highway System. . . .

''As to any such street or highway, the department and the California Highway Commission are, and each of them is, authorized to do any and all things in connection therewith, as may be done with reference to the state highways. The commission may adopt resolutions authorizing condemnation of property necessary for such highways with like effect as it may with reference to state highways. . . .''

The Director of Public Works is authorized to exercise the powers and jurisdiction of the Department of Public Works (Gov. Code, §§ 14001, 14004) and to delegate his powers with respect to highways to the State Highway Engineer as chief of the Division of Highways (Sts. & Hy. Code, §§ 7, 50, 51; Gov. Code, § 7), and it was stipulated that for over 42 years the State Highway Engineer has been the state official who has dealt with the federal government with respect to federal-aid highway projects.

Thus, the Legislature expressly assented to the provisions of the federal act including section 107, abrogated inconsistent state laws, and authorized the department and its officers to act for the state in planning and constructing federally-assisted state highways. ■ Contrary to plaintiffs' contention, the additional authorization to the department ''to do any and all things in connection'' with joint state and federal projects ''as may be done with reference to the state highways'' (Sts. & Hy. Code, § 820.5) is not a limitation on the power of the department to invoke the assistance of the Secretary of Commerce pursuant to section 107 of the federal act. Such an interpretation of section 820.5 would create a needless conflict with the Legislature's assent in section 820 to the federal act. Moreover, section 820.5 antedates both section 107 of the federal act and the latest reenactment of section 820 in 1959. It follows that, even if section 820.5 were inter-

preted to include implied limitations on powers elsewhere granted to the department, such limitations would be superseded by the power to invoke section 107 granted by section 820.

▮▮▮ We hold, therefore, that defendants lawfully invoked the power of the Secretary of Commerce to secure possession of the land in question for the purpose of completing part of the interstate system of highways.

The judgment is affirmed.

Gibson, C. J., Schauer, J., Peters, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Ashburn in the opinion prepared by him for the District Court of Appeal (Cal. App.) 27 Cal.Rptr. 503.

Appellants' petition for a rehearing was denied May 14, 1963. McComb, J., was of the opinion that the petition should be granted.