STATE HIGHWAY COMMISSION v. THE GREENSBORO CITY BOARD OF EDUCATION; GREENSBORO HIGH SCHOOL STADIUM CORPORATION.

(Filed 23 July, 1965.)

**1. Highways § 1—**

The State Highway Commission is an agency of the State created for the purpose of constructing, developing and maintaining a statewide system of highways, G.S. 136.1, and in exercising the power of eminent domain conferred by statute upon it, it is virtually the sovereign State itself and is not a municipality within the meaning of constitutional limitations.

**2. Schools § 4—**

A municipal board of education created by virtue of G.S. 115-27 is an administrative agency of the State with power to sue and be sued as authorized by statute and with power to condemn land for school purposes. G.S. 115-125.

**3. Eminent Domain § 1—**

The power of eminent domain is an inherent power of a sovereign state, and the power of the state to condemn property for a public purpose is limited only by the constitutional requirement that just compensation be paid for land appropriated.

**4. Same—**

The general rule that property already devoted to a public use by an agency having the right of eminent domain may not be condemned by another agency does not apply when the condemnor is the sovereign itself.

**5. Same—**

Where an unchallenged finding of fact is to the effect that the Highway Commission was seeking to condemn property of a school administrative unit for controlled-access facilities for a limited-access highway, *held*, the State Highway Commission is given specific authority to condemn both private and public property for controlled-access facilities, G.S. 136-89.49(2), and in condemning such facility acts virtually for the State itself, and therefore is not subject to the general rule and may condemn such property notwithstanding the property is devoted to a public use by an agency itself having the power of eminent domain.

**6. Pleadings § 29—**

The issues in an action arise upon the pleadings in the case.

**7. Administrative Law § 3—**

The courts will not ordinarily interfere with the exercise of a discretionary power by an administrative agency unless the decision of the agency is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion.

**8. Eminent Domain § 1;   Highways § 1—**

The State Highway Commission is vested with broad discretionary authority in the performance of its statutory duties, and where in the exercise of such discretion it has determined the route of a limited-access high-

way so as to require it to condemn access facilities over land owned by a municipal board of education, its selection of such route cannot be enjoined on the ground that the Commission acted unreasonably and without justification when there is neither allegation nor evidence that the Commission acted arbitrarily or capriciously, or in a manner constituting an abuse of discretion.

APPEAL by plaintiff from *Gambill, J.*, 1 February 1965 Civil Session of GUILFORD, Greensboro Division.

The State Highway Commission commenced this civil action on 8 September 1964, under G.S. Chapter 136, Article 9, by the filing of a complaint, a declaration of taking, and notice of deposit, along with a deposit of $17,850 as just compensation for said taking, to condemn 3.83 acres in fee simple for a right of way of State Highway Project 8.15395, 0.35 of an acre for construction and drainage easements for said project, and 0.02 of an acre for a temporary detour easement for said project from a 129.19-acre tract of land owned by the Greensboro City Board of Education. A small part of this 129.19-acre tract, none of which part is sought to be condemned by plaintiff, was leased by the City Board of Education to the Greensboro High School Stadium Corporation, which has filed no answer.

City Board of Education filed an answer in which it denied that the General Assembly had vested plaintiff with the power of eminent domain to condemn any of the 129.19-acre tract of land owned by it. As a first affirmative defense, it alleges that it is a body corporate existing by virtue of G.S. Chapter 115, and is the governing body of the Greensboro City Administrative Unit, and as such operates the public schools within the Greensboro City Administrative Unit, and plaintiff "has no specific legislative authorization, nor any legislative authorization of unmistakable intent to condemn land owned" by it. As a second affirmative defense, it alleges that the part of its lands plaintiff seeks to condemn "is in actual public use for school purposes, or is now, or may hereafter become, necessary and vital for the operation" of Brooks Elementary School, Kiser Junior High School, and Grimsley Senior High School, which three schools have at present about 3,500 pupils, and plaintiff cannot condemn this land. As a counterclaim it alleges that plaintiff's threatened condemnation will, unless enjoined, cause it immediate and irreparable damage for which it has no adequate remedy at law. It prays that plaintiff's action be dismissed, and that plaintiff be permanently enjoined from condemning or attempting to condemn any part of its land.

Plaintiff filed a reply and a further reply alleging its action is to establish a "controlled-access facility," G.S. 136-89.52, and it had, by virtue of the provisions of G.S. 136-89.52, legislative authority to con-

demn the City Board of Education's land for such purpose, and further alleging that its project is so designed and established as not to interfere with the City Board of Education's access, private or public, to and from the remaining school property, and its project is so designed and established as to facilitate travel and traffic to and from the remaining school property.

On 21 December 1964 Gwyn, J., issued a temporary injunction restraining plaintiff from entering on the land to construct its highway project, pending a final hearing.

On 1 February 1965, pursuant to the provisions of G.S. 136-108, a hearing was had by Gambill, J., to determine all issues raised by the pleadings other than the issue of damages. Judge Gambill heard evidence offered by the State Highway Commission and by the City Board of Education. This is a summary of his findings of fact, except when quoted:

The City Board of Education owns a 129-acre tract of land situate in the city of Greensboro. This tract of land is bounded on the east by Westover Terrace, on the southwest by Benjamin Boulevard, on the west by a golf course, and on the north by land owned by Starmount Company and the city of Greensboro. On this tract of land are three schools, which comprise a part of the school system of the city of Greensboro operated by the City Board of Education. Brooks Elementary School is situate on its northeast corner and faces Westover Terrace. Grimsley Senior High School is situate south of Brooks Elementary School and faces Westover Terrace. Kiser Junior High School is situate on its southwest corner and faces Benjamin Boulevard. The present enrollment in these three schools is about 3,500 students. Parking areas and athletic fields are located on this tract of land. The State Highway Commission claims it has condemned an area of this 129-acre tract of land along its northern line 2,239.09 feet in length and 60 to 316 feet in width. The purpose of the condemnation is "for the purpose of constructing thereon a part of West Wendover Avenue in connection with the State Highway Commission Project No. 8.15395. West Wendover Avenue at the place where the State Highway Commission plans to have it cross over the property of The Greensboro City Board of Education will be a limited access highway consisting of four traffic lanes, two for traffic traveling east and two for traffic traveling west with ramps at Westover Terrace and Benjamin Boulevard."

Between Brooks Elementary School and the northern property line of the 129-acre tract of land there is a playground area for this school and a private access road which runs west from Westover Terrace a distance of more than 450 feet. This private access road is used for the

purposes of loading and unloading students at Brooks Elementary School, ranging in age from 6 to 12 years, by bus and private car, and of delivering supplies to the school. In the event the condemnation here is consummated, it will be necessary to change the loading and unloading of students at Brooks Elementary School to a parking lot south of this school which serves Grimsley Senior High School. The playground area near Brooks Elementary School is used daily by the students at this school for outdoor physical education classes.

Students at Brooks Elementary School and at Kiser Junior High School use other portions of the property sought to be condemned here for collection of specimens for science exhibits in connection with science and biology classes, and it could be used for a cross-country course. It is reasonably probable that the property sought to be condemned here will be needed for additional parking areas and playgrounds in connection with the anticipated future growth of the enrollment in the three schools situate on the 129-acre tract of land.

The State Highway Commission's project can be accomplished by moving it northwardly and off the property owned by the City Board of Education onto vacant property owned by Starmount Company and the city of Greensboro, without materially affecting the project. The State Highway Commission in seeking to condemn property of the City Board of Education has acted without specific authority, or without authority by implication, and its action is "unreasonable and without justification."

Based upon his findings of fact, Judge Gambill made the following conclusions of law:

"1. The State Highway Commission, plaintiff herein, and The Greensboro City Board of Education, one of the defendants herein, are each agencies of the State of North Carolina.

"2. The State Highway Commission has the right, generally, under eminent domain to condemn property owned by The Greensboro City Board of Education.

"3. Under the facts of this case, however, the State Highway Commission does not have authority, either specifically or by implication, to condemn and take for highway purposes the property of The Greensboro City Board of Education which it attempted to condemn and take in this action for that such action is unreasonable and without justification."

Based upon his findings of fact and his conclusions of law, Judge Gambill entered a judgment adjudging and decreeing that the State Highway Commission by this action has acquired no land owned by

the City Board of Education, that its action is dismissed, that its deposit be returned to it, and that it is enjoined permanently from entering upon the property of the City Board of Education in connection with its project No. 8.15395.

From the judgment, the State Highway Commission appeals to the Supreme Court.

*Attorney General Thomas Wade Bruton, Assistant Attorney General Harrison Lewis, and Trial Attorney Andrew McDaniel, and Associate Attorneys Stern, Rendleman & Clark for plaintiff appellant.*

*Moseley & Edwards by Robert F. Moseley and Cooke & Cooke by William Owen Cooke for defendant Greensboro City Board of Education.*

PARKER, J.  At the outset it should be understood that we are not here passing upon the right of *a municipal corporation* to exercise the power of eminent domain to condemn property already devoted to a public use, as was the case in *R. R. v. Greensboro,* 247 N.C. 321, 101 S.E. 2d 347; *Goldsboro v. R. R.,* 246 N.C. 101, 97 S.E. 2d 486; *Yadkin County v. High Point,* 217 N.C. 462, 8 S.E. 2d 470, cases relied on by the City Board of Education. "The State is not a municipality within the meaning of the Constitution." *Bridges v. Charlotte,* 221 N.C. 472, 20 S.E. 2d 825.

The State Highway Commission is a State agency or instrumentality, and as such exercises various administrative and governmental functions. G.S. 136-1; *Smith v. Highway Commission,* 257 N.C. 410, 126 S.E. 2d 87; *Equipment Co. v. Hertz Corp.,* 256 N.C. 277, 123 S.E. 2d 802; *Carpenter v. R. R.,* 184 N.C. 400, 114 S.E. 693. Its powers and duties are set forth in G.S. Chapter 136, Article 2. It is the State agency created for the purpose of constructing, developing, and maintaining "a state-wide system of roads and highways commensurate with the needs of the State as a whole * * *." G.S. 136-1.

The Greensboro City Board of Education was created and exists by virtue of G.S. Chapter 115, Article 5. By virtue of G.S. 115-27, it is a body corporate, and has the authority to purchase and hold real and personal property for school purposes, and to prosecute and defend suits against it. It has the authority, by virtue of G.S. 115-125, to acquire by condemnation sites for school houses or other school facilities.

The statutory machinery for the operation of the public school system of this State is codified in Chapter 115 of the General Statutes. G.S. 115-8 sets up two coordinate classes of local administrative units: (1) county units, and (2) city administrative units. This statute provides "The governing board of a city administrative unit is 'the . . .

city board of education,'" with its executive officer designated a "superintendent," and its executive head a "principal." This Court said in *Smith v. Hefner*, 235 N.C. 1, 68 S.E. 2d 783 (1951): "By application of this principle, a subordinate division of the state, or agency exercising statutory governmental functions like a city administrative school unit, may be sued only when and as authorized by statute." In the *Burlington City Board of Education v. Allen*, 243 N.C. 520, 91 S.E. 2d 180 (1956), the Court said: "The petitioner is an administrative agency of the government."

This is a description of the 129.19 acres of land owned by the City Board of Education as set forth in plaintiff's declaration of taking:

> "Those certain lands lying and being in Morehead Township, Guilford County, North Carolina, and being that parcel of land conveyed to Greater Greensboro School District by deed dated November 5, 1927, recorded in Book 571, page 359; deed to Board of Education of Greater Greensboro School District dated July 11, 1928, recorded in Book 606, page 557; and deed to The Greensboro City Board of Education dated November 16, 1960, recorded in Book 1923, page 406, Guilford County Public Registry; said referenced descriptions being specifically incorporated herein."

We are concerned in the instant case with the power of the sovereign State of North Carolina, acting by the State Highway Commission, its State agency and in essence the sovereign State of North Carolina itself, and in behalf of the State and for its immediate sovereign purposes, to condemn, under the provisions of G.S. 136-89.52, for a "controlled-access facility" to a controlled-access State highway project property owned by the Greensboro City Board of Education and devoted to a public use, which City Board of Education is "a subordinate division of the state, or agency exercising statutory governmental functions," and vested with the power of eminent domain. This is not an action, if there ever should be such, in which the State Highway Commission seeks to acquire by condemnation property owned by, and with title in, the State of North Carolina, and already devoted to a public use.

The power of eminent domain is one of the essential attributes of a sovereign state, and an inherent power necessary to the very existence of government. It comes into being *eo instante* with the establishment of government, and continues as long as the government endures. It does not require recognition by constitutional provision, but exists in absolute and unlimited form, and under this doctrine, therefore, positive assertion of limitations upon the power is required. Such assertion of limitations is a limitation upon a sovereign state's such inherent

power. *Redevelopment Commission v. Hagins*, 258 N.C. 220, 128 S.E. 2d 391, and authorities there cited; *Burlington City Board of Education v. Allen, supra;* 1 Nichols on Eminent Domain, rev. 3d Ed., 1.14[2], p. 18. In *Burlington City Board of Education v. Allen*, it is said: "It is the exclusive prerogative of the Legislature — limited only by our organic law which requires that just compensation shall be paid for the land so appropriated — to prescribe the method of taking land for the public use."

The following finding of fact made by Judge Gambill is not challenged by the parties: "West Wendover Avenue at the place where the State Highway Commission plans to have it cross over the property of The Greensboro City Board of Education will be a limited access highway consisting of four traffic lanes, two for traffic traveling east and two for traffic traveling west with ramps at Westover Terrace and Benjamin Boulevard." This unchallenged finding of fact shows that the State Highway Commission is seeking to condemn land of the City Board of Education for "controlled-access facilities" within the intent and meaning of G.S. 136-89.49(2), which reads: " 'Controlled-access facility' means a State Highway, or section of State highway, especially designed for through traffic, and over, from or to which highway owners or occupants of abutting property, or others, shall have only a controlled right or easement of access." *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E. 2d 732.

G.S. 136-89.49 is codified under G.S. Chapter 136, Article 6D.

G.S. 136-89.52, which is codified under G.S. Chapter 136, Article 6D, reads in relevant part: "For the purposes of this article, the Commission may acquire private *or public property and property rights for controlled-access facilities* and service or frontage roads, including rights of access, air, view and light, by gift, devise, purchase, or condemnation in the same manner as now or hereafter authorized by law to acquire such property or property rights in connection with highways. The property rights acquired under the provisions of this article may be in fee simple or an appropriate easement of right of way in perpetuity." (Emphasis supplied.)

In 1 Nichols on Eminent Domain, rev. 3d Ed., § 2.2, p. 203, it is stated: "In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor. If the sovereign, such as the state or the United States, on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the *'res'* as public property, generally, has no inhibiting influence upon the exercise of the power."

Likewise it is stated in 29A C.J.S., Eminent Domain, § 74, pp. 326-28: "As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient; and this is so whether the property was acquired by condemnation or by purchase. The rule also applies to property about to be lawfully appropriated, although the appropriation is not complete. However, the general rule does not ordinarily apply where the power of eminent domain is being exercised by the sovereign itself, such as the state or federal government, for its immediate purposes, rather than by a public service corporation or a municipality." To the same effect, Jahr, Eminent Domain, § 20.

The factual situation in the case of *State of Louisiana through the Department of Highways v. Ouachita Parish School Board,* 242 La. 682, 138 So. 2d 109, *reh. den.* 2 February 1962, *cert. den.* 370 U.S. 916, 8 L. Ed. 2d 497, is quite similar to the factual situation in the instant case. In that case the proceeding was instituted by the Department of Highways for the expropriation for a controlled-access highway facility of a tract of land owned by the Ouachita Parish School Board, consisting of an entire square in the city of Monroe with buildings and improvements. The tract sought to be expropriated at the time of the suit was being used by the school board in connection with a junior high school with 1200 pupils, and lies in the center of the school facility between the classroom building and the gymnasium. The Supreme Court, after first holding that Parish School Boards in Louisiana are not immune from suit, said:

> "The next question for determination is whether public property devoted to a public use (as here, to a school) and owned by a public corporation (as in this case, the Ouachita Parish School Board), itself vested with the power of expropriation, is subject to expropriation by The Department of Highways, an agency of the state created by the Legislature by Act 4 of 1942, R.S. 48:11 *et seq.,* which also possesses the power of expropriation.
>
> *        *        *
>
> "In determining whether property already devoted to a public use can be subjected to expropriation, the factor to be considered is the character of the condemnor. If the sovereign on its own behalf seeks to acquire such property by eminent domain, the fact that the land sought to be taken is public property generally

is immaterial. *Ibid* [1 Nichols on Eminent Domain]., Sec. 2.2, pp. 131-132; Jahr, Law of Eminent Domain, sec. 20, p. 37 (1953); *Elberton Southern Ry. Co. v. State Highway Dept.*, 211 Ga. 838, 89 S.E. 2d 645; see *Township of Weehawken v. Erie Railroad Company*, 20 N.J. 572, 120 A. 2d 593.

*      *      *

"The petition filed by the highway department discloses that it desires to construct in the Parish of Ouachita certain projects, one of which is designated State Project No. 451-06-07, Federal Aid Project No. I-20-3(12)115; that this project is a part of the state highway system as well as a part of the national system of interstate and defense highways; that this project will be 'a *controlled-access facility*, and no person has any right of access to, from or across such facility to or from abutting lands except at the designated points at which access is permitted upon the terms and conditions specified from time to time and upon the service, frontage or access roads provided' (italics ours); that there is included within the right of way for this project the property of the Ouachita Parish School Board which the department seeks to expropriate. Moreover, the resolution of the Board of Highways attached to the department's petition specifically states that the project above designated provides for the construction of what is called a controlled-access facility, and the *ex parte* order of expropriation signed by the trial judge clearly shows that the property being expropriated is acquired for a controlled-access facility.

"In Title 48 of the Louisiana Revised Statutes of 1950, Chapter I styled 'State Department of Highways', Part XIV designated 'Control of Access', Section 301 provides that the highway authorities of the state may establish, maintain, and provide controlled-access facilities for public use, etc. Section 303 [which contains substantially the identical language used in N.C.G.S. 136-89.52] reads in part:

" 'For the purposes of this Part, the highway authorities may acquire private or public property and property rights for controlled-access facilities and service roads, including rights of access, air, view, and light, by donation, purchase, exchange, lease, or expropriation in the same manner as they are now or hereafter may be authorized by law to acquire property or property rights in connection with highways and streets within their respective jurisdictions. They may acquire any use of the property or the full ownership of it. * * *'

"Thus the Legislature has expressly given the highway department authority to expropriate public property for the purpose for which it here seeks to expropriate the school board's property. Whether the department has been given authority, either expressly or by necessary implication, to expropriate public property for other purposes need not be decided in this suit."

The Court held that the State Highway Department had authority to expropriate a school board's property for the purpose of acquiring land for a controlled-access highway facility, even though the property sought to be condemned was devoted to a public use and even though the school board itself was vested with power of expropriation.

This matter was recently considered in *Riley v. South Carolina State Highway Department,* 238 S.C. 19, 118 S.E. 2d 809 (1961), in which a unanimous Court held that the Highway Department as an agency of the State had the power to condemn for highway purposes a strip of land through certain property in the city of Sumter, which is used as an orphanage for white children, even if it was considered as being devoted to a public use. The respondents did not question the power of the Legislature to authorize the taking of land already applied to one public use and devote it to another, but contended that where such a taking will destroy or materially interfere with the former use, the mere general authority to exercise the power of eminent domain is insufficient, and that such authority must be given by the Legislature in express terms or by necessary implication. The Supreme Court of South Carolina observed that this general rule is well settled, and went on to state: "We do not think the rule relied on by respondents applies to the facts of this case. The condemnation here is by the Highway Department as an agency of the State, in behalf of the State and for its own immediate purpose. The condemnor is, in essence, the sovereign."

In *State of Missouri ex rel. State Highway Commission of Missouri v. Hoester,* Missouri Supreme Court, En Banc, 362 S.W. 2d 519 (1962), *reh. den.* 11 December 1962, the Supreme Court of Missouri held that the State Highway Commission in condemning a right of way for a highway acts for the State and as its *alter ego* so that the taking is by the sovereign, and it has authority to condemn the property of a fire protection district already devoted to a public use. The fire protection district was established by statute, and given authority to exercise the power of eminent domain. The Court said: "Our conclusion is that, since the highways the Commission is authorized to acquire, locate and construct belong to the state and are provided for the use and benefit of all of its citizens, the Commission in condemning right

of way for them acts for the state and as the *alter ego* of the state, so that the taking is by the sovereign."

It was held in *Elberton Southern Ry. Co. v. State Highway Department*, 211 Ga. 838, 89 S.E. 2d 645, 648, *reh. den.* 13 October 1955, that under a general power of condemnation, the Highway Department of Georgia could acquire for public road purposes a part of a railroad right of way and in such condemnation proceedings "where, as here, the State, the sovereign itself, is acting by and through its duly constituted agency, the State Highway Department, it has paramount authority in the matter of taking any property within its boundaries for those public uses to which it may reasonably devote such property, including that which has already been devoted to a different public use."

See also to the same effect: *State v. Superior Court*, 44 Wash. 2d 607, 269 P. 2d 560; *State Highway Commission v. City of Elizabeth*, 102 N.J. Eq. 221, 140 A. 335; *Welch v. City and County of Denver*, 141 Colo. 587, 349 P. 2d 352; *In re Elimination of Highway-Railroad Crossing in Village of Altamont*, 234 App. Div. 129, 254 N.Y.S. 578, 580, and cases cited, appeal dismissed 259 N.Y. 564, 182 N.E. 182; *City of Davenport v. Three-fifths of an Acre of Land*, 252 F. 2d 354; *United States v. Certain Parcels of Land*, D.C. 175 F. Supp. 418.

In *Department of Public Works and Buildings v. Ells*, 23 Ill. 2d 619, 179 N.E. 2d 679 (1962) the Supreme Court of Illinois held that the State Department of Public Works and Buildings had no authority, under its general power of eminent domain, to condemn school district property for highway purposes. The Court stated: "The Department's petition was based on section 4-501 of the Highway Code, which authorizes it to acquire, by purchase or by eminent domain, 'any land, rights, or other property necessary for the construction, maintenance or operation of State highways.' (Ill. Rev. Stat. 1961, chap. 121, par. 4-501)." This case is distinguishable from the instant case, in that the State Highway Commission in the instant case is proceeding under the provisions of G.S. 136-89.52 which gives it express and explicit legislative power and authority to "acquire private or public property and property rights for controlled-access facilities * * * by gift, devise, purchase, or condemnation in the same manner as now or hereafter authorized by law to acquire such property or property rights in connection with highways," and "the property rights acquired under the provisions of this article may be in fee simple or an appropriate easement of right of way in perpetuity."

The case of *Commonwealth v. Massachusetts Turnpike Authority*, 346 Mass. 250, 191 N.E. 2d 481, relied on by City Board of Education, is distinguishable, in that the condemnor is the Massachusetts Turnpike Authority, and not the State of Massachusetts, and it was seeking to

take for highway purposes land belonging to the Commonwealth. The case of *New Jersey Turnpike Authority v. Parsons, Attorney General,* 3 N.J. 235, 69 A. 2d 875, relied on by City Board of Education, is distinguishable, in that the condemnor is the New Jersey Turnpike Authority, and in that case the Court said:

> "Reading the provisions of these two sections together, we do not construe Section 5 (j) as granting any power of general condemnation of property owned or held by the State. In the light of the detailed directions for the acquisition of state property by lease, loan, grant or conveyance contained in Section 14 and the absence of a clear and unambiguous grant of authority to the Turnpike Authority to take state property by condemnation, we cannot properly infer the existence of the power of eminent domain as to state property in the Turnpike Authority."

There is nothing in our Constitution inhibiting the Legislature from granting express and explicit power and authority to the State Highway Commission to condemn for "controlled-access facilities" property owned by City Board of Education and devoted to public use, except that our organic law provides that just compensation shall be paid for property so appropriated. *Burlington City Board of Education v. Allen, supra.* There is an unchallenged finding of fact by Judge Gambill that "West Wendover Avenue at the place where the State Highway Commission plans to have it cross over the property of the Greensboro City Board of Education will be a limited access highway." This finding of fact is supported by evidence offered by the State Highway Commission of its maps and plans and profile of its Project No. 8.15395 showing that it "is a controlled-access project from beginning of the project to Battleground Rd. and from Southern R. R. R/W (Sta. 136+43±) to Summit Ave. with access limited to the Ramps and side streets shown on the plans," and by the resolution of the State Highway Commission directing the acquisition of property by condemnation for the construction of Project No. 8.15395 "in accordance with the preliminary right-of-way plans, together with such control of access as has been hereinabove authorized." Our conclusion is that the General Assembly by virtue of the provisions of G.S. 136-89.52 has granted to the State Highway Commission, acting in behalf of the State of North Carolina and for its sovereign purposes in constructing, developing and maintaining "a state-wide system of roads and highways commensurate with the needs of the State as a whole," express and explicit power and authority in plain and unmistakable words to acquire by condemnation the property owned by the Greensboro City Board of Education for

"controlled-access facilities" which it here seeks to acquire by condemnation to complete its Project No. 8.15395.

Neither party has excepted to or assigned as error Judge Gambill's second conclusion of law reading: "The State Highway Commission has the right, generally, under eminent domain to condemn property owned by the Greensboro City Board of Education." The State Highway Commission here is proceeding under the provisions of G.S. 136-89.52. Judge Gambill's second conclusion of law as to the authority of plaintiff under its general power of eminent domain to condemn property owned by the City Board of Education is irrelevant here, and need not be decided in this case.

The State Highway Commission assigns as error the following, which Judge Gambill designates findings of fact, but which in reality are mixed findings of fact and conclusions of law:

"XIV. * * * The proposed project of the State Highway Commission can be accomplished even if the proposed right of way is moved northwardly so that all of it is removed from the property of The Greensboro City Board of Education and will not materially affect this project.

⁂          ⁂          ⁂

"XVI. In disregarding the necessity of this property for use and the use for which it is now being put by The Greensboro City Board of Education for school purposes when said right of way can be located on other property without materially affecting the proposed project, the State Highway Commission in attempting to take the property of The Greensboro City Board of Education in this action has acted without specific authority or without authority by implication, in that such action is unreasonable and without justification."

These assignments of error are good. In the first place, the City Board of Education's answer does not raise any issue of bad faith or of arbitrary, capricious or fraudulent action on the part of the State Highway Commission, or that the action of the State Highway Commission is unreasonable and without justification. *State v. Superior Court, supra.* "A trial is the examination of the issues joined between the parties, and these issues arise upon the pleadings in the case." 1 McIntosh, N. C. Practice and Procedure, 2d Ed., § 1351. The City Board of Education's defense as alleged in its answer is that the State Highway Commission "has no specific legislative authorization, nor any legislative authorization of unmistakable intent to condemn land owned" by it which "is in actual public use for school purposes, or is

now, or may hereafter become, necessary and vital for the operation" of its schools. Second, there is no evidence in the record to support the challenged part of finding of fact XIV, and there is no evidence in the record to support this part of finding of fact XVI challenged by plaintiff, to wit, "In disregarding the necessity of this property for use and the use for which it is now being put by The Greensboro City Board of Education for school purposes when said right of way can be located on other property without materially affecting the proposed project * * *." It is true, Judge Gambill made the following observations:

> "Now, is it reasonable or necessary that they take part of the school property there in order to build the road when they can build the road on property which is apparently used for nothing but a golf course, and at this point, that is the evidence, and the map would indicate that. Why can't the Highway Commission move that road down about 50 feet and get off this property and this question wouldn't arise as far as the school is concerned? You would run into the question of the Town owning the other property, and it is true it is public property, but it is not being used except for a golf course. Well, we can move our tees very easily on those. We don't necessarily have to have a golf course. That will be the thing I am concerned with."

Judge Gambill's observations are not evidence, and further he did not observe that if the proposed right of way for Project No. 8.15359 is moved off the school property, it would not materially affect the project. Third, it is well-settled law in this State that the State Highway Commission is vested by statute with broad discretionary authority in the performance of its statutory duties, and the court cannot substitute its judgment for that of the State Highway Commission, and control the discretion vested in the State Highway Commission to acquire by condemnation the property here sought to be acquired for "controlled-access facilities," and the exercise by it of such discretionary authority and powers is not subject to judicial review, unless its action here is so clearly unreasonable as to amount to oppressive and manifest abuse, and as to this the City Board of Education's answer raises no issue of oppressive and manifest abuse of its discretion by the State Highway Commission here, and if it did, there is no evidence before us that the action of the State Highway Commission here in respect to City Board of Education's property amounts to an oppressive and manifest abuse of the State Highway Commission's discretion. *Cameron v. Highway Commission,* 188 N.C. 84, 123 S.E. 465; *Road Commission v. Highway Commission,* 185 N.C. 56, 115 S.E. 886. See

*Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129, for a brief statement as to the greater safety and convenience for motorists using limited-access highways and limited-access urban highways over using ordinary highways. Fourth, G.S. 136-89.52 grants the State Highway Commission specific authority, as above stated, to acquire by condemnation the school property it seeks here to acquire for "controlled-access facilities."

Plaintiff assigns as error Judge Gambill's finding of fact, which is a conclusion, that "if such construction is started, immediate and irreparable damage and injury will result to the property of the Greensboro City Board of Education for which damage and injury said defendant has no adequate remedy at law." This assignment of error is good.

Plaintiff assigns as error Judge Gambill's conclusion of law No. 3:

> "Under the facts of this case, however, the State Highway Commission does not have authority, either specifically or by implication, to condemn and take for highway purposes the property of The Greensboro City Board of Education which it attempted to condemn and take in this action for that such action is unreasonable and without justification."

For reasons stated above, this assignment of error is good.

Plaintiff assigns as error the judgment adjudging and decreeing that the State Highway Commission by this action has acquired no land owned by the City Board of Education, that its action is dismissed, that its deposit be returned to it, and that it is enjoined permanently from going upon the property of the City Board of Education in connection with its Project No. 8.15395. For reasons above stated, this assignment of error is good.

This action is remanded to the superior court for the entry of a judgment in accordance with this opinion, and in this judgment shall be a provision for the determination of an issue of the damages to be recovered by the City Board of Education for its property taken in this action by the State Highway Commission.

Error and remanded.