BERTHA TURNER, Administrator for the Estate of CLINTON HARMON, Plaintiff v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant And KARIA HAWKINS, Administrator for the Estate of DAMIEN S. HAWKINS, Plaintiff v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant

No. COA11-1514

(Filed 2 October 2012)

## 1. Tort Claims Act—negligence—duty not breached

The Industrial Commission did not err in a Tort Claims Act case by finding that the North Carolina Department of Transportation did not breach its duty to plaintiffs to maintain SR 1422 in a safe condition. The Court of Appeals affirmed the opinions and awards of the full Commission denying plaintiffs' claim for benefits under the North Carolina Tort Claims Act.

## 2. Tort Claims Act—negligence—proximate cause—issue not reached

Where competent evidence supported the Industrial Commission's finding in a Tort Claims Act case that the North Carolina Department of Transportation did not breach its duty to maintain SR 1422 in a safe condition, the Court of Appeals did not need to reach the issue of proximate cause.

Appeal by plaintiffs from Opinions and Awards of the Full Commission entered 4 August 2011 by Commissioner Staci T. Meyer of the North Carolina Industrial Commission. Heard in the Court of Appeals 23 May 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Melody R. Hairston, for the North Carolina Department of Transportation.*

*Law Offices of Alvin L. Pittman, by Alvin L. Pittman, for plaintiff-appellants.*

BRYANT, Judge.

Where the North Carolina Department of Transportation did not breach its duty to plaintiffs, we affirm the 4 August 2011 Opinions and Awards of the Full Commission denying plaintiffs' claim for benefits under the North Carolina Tort Claims Act.

### Facts and Procedural History

Plaintiffs Karia Hawkins, Administrator of the Estate of Damien S. Hawkins, and Bertha Turner, Administrator of the Estate of Clinton Harmon, commenced separate actions against the North Carolina Department of Transportation ("DOT") by filing affidavits asserting a claim for damages under the Tort Claims Act with the Industrial Commission ("Commission") on 15 November 2005 and 1 December 2005, respectively. On 10 March 2006, DOT answered both affidavits and included motions to dismiss, affirmative defenses alleging intervening and superseding negligence and contributory negligence, and a counterclaim seeking "contribution and/or indemnification[] and set-off" as a result of the alleged negligence of Clinton Harmon ("Harmon").

On 20 October 2009, DOT filed motions for summary judgment. Plaintiffs responded by filing a motion for summary judgment and, alternatively, a motion for summary adjudication of issues. Deputy Commissioner Stephen T. Gheen denied the parties' cross-motions for summary judgment in an order filed 3 February 2010. The case was heard before Deputy Commissioner George T. Glenn II on 26 October 2010.

On 29 December 2004, at 7:15 p.m., Harmon, Jermaine Whitaker ("Whitaker"), and fourteen-year-old Damien Hawkins ("Hawkins") were traveling by car to a basketball tournament at Northampton-West High School. Harmon was the driver. Whitaker and Hawkins were passengers. Harmon was talking on his cell phone when he missed the correct turn. Harmon took a left turn onto SR 1422 (Van Warren Road), drove past the end of the road, and onto Thelma Boat Landing – where the road surface changed to gravel. When the car tires hit the gravel, Harmon applied the brakes, but despite this, the car traveled across the Thelma Boat Landing, over a rock barrier, and into Roanoke Rapids Lake ("Lake"). As it sank, Harmon, Whitaker, and Hawkins were each able to exit the vehicle; however,

Harmon and Hawkins drowned before they could reach the shore. Whitaker survived.

Deputy Commissioner Glenn filed a Decision and Order in each action on 26 January 2011 awarding $300,000.00 to the Estate of Clinton Harmon and $350,000.00 to the Estate of Damien S. Hawkins. DOT timely filed notices of appeal to the Full Commission ("the Commission") on 28 January 2011. The case was heard before the Commission on 10 June 2011. On 4 August 2011, Commissioner Staci T. Meyer filed an Opinion and Award for the Commission, reversing the Decision and Order of Deputy Commissioner Glenn as to each action, denying plaintiffs' claims for benefits under the Tort Claims Act. Commissioners Danny Lee McDonald and Christopher Scott concurred. Plaintiffs appeal.

---

On appeal, plaintiffs contend that the Commission erred in concluding they failed to prove DOT's negligence. More specifically, the issues plaintiffs raise[1] can be combined and addressed under the following two issues: whether the Commission erred in finding (I) DOT did not breach its duty to plaintiffs; and (II) plaintiffs failed to prove their injuries were proximately caused by a breach of duty by DOT.

"The [DOT] is subject to a suit to recover damages for death caused by its negligence only as is provided in the Tort Claims Act." *Drewry v. N.C. Dep't of Transp.*, 168 N.C. App. 332, 336, 607 S.E.2d 342, 346 (2005) (citation omitted). Under the Tort Claims Act,

[t]he Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina.

---

1. Plaintiffs raise six issues on appeal: whether the Commission erred in (1) making certain findings of fact; (2) premising its conclusions of law based on said findings of fact; (3) finding no evidence that DOT had notice of any condition that would have prompted an engineering study in relation to the lake or placement of warning signs; (4) concluding that DOT did not breach a duty owed to plaintiffs; (5) concluding that plaintiffs failed to prove negligence; and (6) finding DOT's failure to post warning signs on SR 1422 was not the proximate cause of plaintiffs' injuries.

N.C. Gen. Stat. § 143-291 (2011). The standard of review for an appeal from a decision of the Commission under the Tort Claims Act is "for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C. Gen. Stat. § 143-293 (2011). Thus, "when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dep't of Transp.*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998) (citation omitted). We "[do] not have the right to weigh the evidence and decide the issue on the basis of its weight. [Our] duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Drewry*, 168 N.C. App. at 337, 607 S.E.2d at 346 (citation omitted).

"Under the [Tort Claims] Act, negligence is determined by the same rules as those applicable to private parties." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988) (citation omitted). "To establish actionable negligence, plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Id.* (citation omitted). Plaintiffs have the burden of proof. *Drewry*, 168 N.C. App. at 337, 607 S.E.2d at 346 (citing *Griffis v. Lazarovich*, 161 N.C. App. 434, 443, 588 S.E.2d 918, 924 (2003) (Negligence is not presumed from the "mere happening of an accident[.]")).

*I*

**[1]** Plaintiffs contend that the Commission erred in finding that DOT did not breach its duty to maintain SR 1422 in a safe condition. In support of their contention, plaintiffs argue that the Commission erred in making certain findings of fact and using those findings of fact to arrive at their conclusions of law. We disagree.

In order to find a breach of duty, there must be a duty owed. The DOT's duty is dictated by the North Carolina General Statutes, which provides that "[t]he general purpose of the [DOT] is to provide for the necessary planning, construction, maintenance, and operation of an integrated statewide transportation system for the economical and safe transportation of people and goods as provided for by law." N.C. Gen. Stat. § 143B-346 (2011). The DOT does not dispute this duty, as

evidenced by its admission that the "[DOT], the Division of Traffic Engineers, and Andy Brown, in his capacity as an employee of the [DOT], had a duty to maintain SR 1422 in a safe condition, including the posting of appropriate signs." Instead, the DOT denies that it breached this duty. "The [DOT] is vested with broad discretion in carrying out its duties and the discretionary decisions it makes are not subject to judicial review 'unless their action is so clearly unreasonable as to amount to oppressive and manifest abuse.' " *Drewry*, 168 N.C. App. at 338, 607 S.E.2d at 346-47 (quoting *State Highway Comm'n v. Greensboro City Bd. of Education*, 265 N.C. 35, 48, 143 S.E.2d 87, 97 (1965)).

Plaintiffs contend that the DOT breached its duty by failing to place warning signs along SR 1422. Specifically, plaintiffs assign error to the Commission's findings of fact 12, 13, 14, 15, 17, 19, 20, 21, 22, and 23.[2] We will consider each of the Commission's challenged findings of fact.

Plaintiffs admit that the Commission's findings of fact 12, 13, 14, and 15 accurately reflect witness testimony. Nonetheless, plaintiffs argue that these findings of fact are not supported by competent evidence because the findings ignore that the DOT's duty to maintain the roads in a safe condition, including the posting of appropriate signs, is a trigger for safety studies. We disagree.

Findings of fact 13 and 14 state:

> 13. The [DOT] is required to follow the Manual on Uniform Traffic Control Devices (MUTCD) and additional policies and procedures in determining where road signage should be placed as required by N.C. Gen. Stat. § 136-30(a). Pursuant to the MUTCD, warning signs are to be out in place only after engineering studies have been conducted. The MUTCD states that warning signs should not be overused, because overuse can cause drivers to disregard them.
>
> 14. While the MUTCD and State law do not mandate when and [sic] engineering study should be conducted, the [DOT] follows its policy and procedure and conducts engineering studies as a result of specific triggering events. These triggering

---

2. Plaintiffs argue the Commission erred in making findings of fact 6, 7, and 8 because they are either misleading or irrelevant. However, we review the Commission's findings of fact only to determine if they are supported by competent evidence. Therefore, we do not address these particular findings.

events include accident investigations where the facts indicate that road designs, signs, or other factors controlled by DOT may be implicated, patterns of traffic accidents based on the severity as determined by the Highway Safety Improvement Program, individuals' requests including those of law enforcement and those studies initiated by [DOT] when it has reason to believe a study is warranted.

In addition to prescribing the duty of the DOT, the North Carolina General Statutes incorporate the Manual on Uniform Traffic Control Devices ("MUTCD"). *See* N.C. Gen. Stat. § 136-30(a) (2011) ("The [DOT] may number and mark highways in the State highway system. All traffic signs and other traffic control devices placed on a highway in the State highway system must conform to the [MUTCD]."). DOT traffic engineers Andy Brown ("Brown") and Wallace Jernigan Jr. ("Jernigan") testified at the hearing before the Deputy Commissioner regarding the MUTCD and plaintiffs admit in their brief that the findings of fact accurately reflect the engineers' testimony. Nevertheless, we review the testimony of Brown and Jernigan.

At trial, Brown and Jernigan testified that the MUTCD provides a uniform standard by which DOT maintains roads controlled by the State, including how and when to post traffic signs. Brown and Jernigan also testified that an engineering study is to be conducted before traffic control devices, including warning signs, are posted. Jernigan stated that the MUTCD "recommends that discretion be used in the installation of warning signs because a [sic] overuse of warning signs could . . . lead to disrespect by drivers." Furthermore, their testimony provided that the DOT conducts engineering studies after certain triggering events. These triggering events include a pattern of crashes reported by the Highway Safety Improvement Program, after certain severe accidents, such as those resulting in fatalities, and when individuals, both citizens and law enforcement, make requests for an engineering study to be conducted.

Findings of fact 12 and 15 are similarly supported by testimony. These findings provide:

12. Following his investigation of this accident, Trooper Bullock forwarded a report to [DOT] indicating that warning signs needed to be placed on SR 1422 indicating that the roadway ended. Trooper Bullock testified that the purpose of the report, which is routinely done after accidents involving state property, was to request that [DOT] have their engineers look

into whether signs should be placed along the road. The forwarding of this report by Trooper Bullock was the triggering factor for [DOT] to do an engineering study to determine whether additional safety improvements were needed including warning signs being placed on SR 1422.

15. There was a Nighttime Conditions Survey conducted by [DOT] in late 2003 to make certain that the signs already posted on SR 1422 were visible and in good repair. The study was not conducted in order to determine whether additional safety improvements were needed along a particular route from an engineering perspective.

Again, plaintiffs admit that these findings accurately reflect witness testimony. Finding of fact 12 concerns the report issued by Trooper Bullock regarding the accident in question. This report was not filed until after the accident and therefore is not relevant in determining whether the DOT should have performed an engineering study prior to the accident. In regards to finding of fact 15, Jernigan testified that the purpose of the 2003 Nighttime Conditions Survey was "to determine the maintenance condition of the signs that exist at that time. It's not a conduction of an engineering study to determine if additional safety improvements need to be completed." During the survey, "existing signs are reviewed for legibility and to make sure they're not damaged." Thus, findings of fact 12 and 15 are supported by the evidence.

Plaintiffs' primary challenge to findings of fact 12, 13, 14, and 15 is that the DOT's general duty to maintain the roads in a safe condition is a trigger to conduct safety studies. The record evidence does not support this contention. While it is true that the general duty of the DOT is to maintain the roads in a safe condition, the standard of care by which the DOT acts to fulfill this duty is outlined in the MUTCD and the DOT's policies. There is no evidence in the record that the DOT did not act in accordance with the MUTCD and their policies, as there is no evidence that the DOT was aware that an unsafe condition existed on SR 1422.

Plaintiffs argue that "[f]indings of [f]act 17 and 19 are not supported by competent evidence because the State had been on notice since 1961 of an unsafe condition on SR 1422." Findings of fact 17 and 19 state:

17. Before the filing of Trooper Bullock's report, there had never been any notice or report regarding unsafe conditions on

TURNER v. N.C. DEP'T OF TRANSP.

[223 N.C. App. 90 (2012)]

SR 1422 to the [DOT] and there had never been a request that [DOT] examine the roadway or its signs due to concerns about the proximity of the lake or any lack of signs indicating that the road was a dead end road.

19. There is no evidence to find that any warning sign should have been posted on SR 1422 at the time of the accident to show that the absence of any particular sign caused or contributed to the accident. The evidence presented established that no such warning signs were required on SR 1422. [DOT] engineers Andy Brown and Lee Jernigan testified that while the MUTCD describes how "dead end" and "no outlet" signs should be placed if they are used, these signs are not required by the MUTCD or by the [DOT's] policies. In addition, there is no requirement that [DOT] post signs warning of lakes or other bodies of water near public highways.

There is evidence in the record to support these findings of fact.

In regard to finding of fact 17, testimony presented at trial revealed that no incidents occurred on SR 1422 before the accident in question that would have triggered an engineering study. Brown testified that there had not been any fatal accidents on SR 1422, the DOT had not received any requests for an engineering study to be performed prior to the accident in question, and there was not a pattern of crashes that would have triggered a recommendation by the highway safety program for an engineering study. Additionally, in regard to finding of fact 19, Brown and Jernigan both testified that "dead-end" and "no outlet" signs were not required. Jernigan further testified that signage is not required for roadways that are in proximity to bodies of water.

Plaintiffs assert that the fact that SR 1422 dead-ended in a boat landing is a dangerous condition. Plaintiffs argue that because the DOT has known since 1961 that SR 1422 dead-ended in a boat landing, the DOT was on notice of an unsafe condition. But, plaintiffs assume without supporting evidence that the dead-end itself is a dangerous condition.

For the proposition that the duty to maintain the roads in a safe condition carries with it the duty to investigate and identify hazardous conditions, plaintiffs cite *Phillips v. N.C. Dep't of Transp.*, 80 N.C. App. 135, 341 S.E.2d 339 (1986). In *Phillips*, our Court vacated the decision of the Commission and found that the failure of the DOT

and its employees to fix a "cavernous hole" that extended several feet below the roadway and was within the right of way of a State controlled highway was sufficient grounds to hold the DOT negligent. *Id.* In *Phillips*, DOT employees had been aware of the hole for thirty years and knew that numerous cars had been removed from the hole. *Id.* at 135-36, 341 S.E.2d at 339. "The record shows without dispute or contradiction that a condition dangerous to users of the highway had existed for many years without being corrected by those responsible for maintaining the highway." *Id.* at 138, 341 S.E.2d at 341.

Plaintiffs' reliance on *Phillips* is misplaced. Unlike in *Phillips*, plaintiffs here cannot show that DOT had notice of a dangerous or unsafe condition. And, because neither the proximity of SR 1422 to the lake nor the dead-end were conditions requiring signs pursuant to the MUTCD or DOT's policies, plaintiffs' assertions must fail.

Plaintiffs also challenge the following findings of fact:

> 20. Moreover, there is no evidence to establish that the proximity of the lake to the roadway amounted to a dangerous situation for the traveling public or that the condition required warning signs on SR 1422.

> 21. There is no evidence to show that there existed a condition that prompted any employee of [DOT] or anyone else traveling on SR 1422 to make a report to [DOT]. Consequently, there is no evidence that [DOT] had notice of any condition that would have prompted an engineering study, prior to the accident in this claim, in relation to the lake or placement of warning signs.

> 22. Plaintiff[s] [have] also alleged that [DOT] was negligent in failing to lower the speed limit on SR 1422. However, the speed limit is determined by N.C. Gen. Stat. § 20-141(a) and (b). While N.C. Gen. Stat. § 20-141(d) gives [DOT] the power to declare a different speed limit, the change must be based on an engineering study and traffic investigation. As there had never been circumstances that would have triggered the [DOT] to conduct such an engineering study, no study was conducted.

As stated, neither the MUTCD nor DOT's policies required the placement of warning signs on roads due to their proximity to a lake. Furthermore, the testimony of Brown and Jernigan revealed no incidents occurring on SR 1422 before the accident in question that would trigger an engineering study and no requests for an engineer-

ing study on SR 1422 were made until the accident in question. Therefore, the Commission did not err in making findings of fact 20 and 21.

Plaintiffs nevertheless argue that proximity of SR 1422 to the lake was a dangerous condition and the dead-end was a hidden danger which required a warning sign. In their brief to this Court, plaintiffs assert that "when a hazard might be obvious under some circumstances, warning signs are required when it is reasonably foreseeable the hazard may be blocked from view under certain circumstances." In support of their argument, plaintiffs cite *Pittman v. N.C. Dep't of Transp.*, 97 N.C. App. 658, 389 S.E.2d 275 (1990). In *Pittman*, the plaintiff sued the DOT for negligence after he collided with a DOT truck that was blocking a portion of a State highway while DOT employees were replacing speed limit signs along the road. 97 N.C. App. 658, 389 S.E.2d 275 (1990). It was noted that "[o]bstructing a well-traveled highway without properly warning approaching motorists is negligence," and where the flashing lights on the parked DOT truck were blocked from the plaintiff's view by the vehicle ahead of him, the danger was reasonably foreseeable. *Id.* at 660, 389 S.E.2d at 276. Our Court affirmed the decision of the Commission in *Pittman*, holding "the flashing light on defendant's truck was not a proper warning that [a] parked truck was in the highway because [the lights were] blocked from plaintiff's view by a vehicle ahead of him, as [the] defendant should have reasonably foreseen would be the case . . . ." *Id.*

Plaintiffs' reliance on *Pittman* is misplaced. In *Pittman*, the DOT was found negligent for *creating* a dangerous condition, then failing to properly warn drivers of the danger. Here, plaintiffs assert that DOT was negligent for failing to act. As previously stated, there is no evidence to establish that proximity to the lake or the dead-end at the boat landing were dangerous conditions requiring warning signs.

In regard to finding of fact 22 and whether DOT was negligent in failing to lower the speed limit on SR 1422 where the speed limit was not posted, General Statutes section 20-141(b) provides "it shall be unlawful to operate a vehicle in excess of . . . [f]ifty-five miles per hour outside municipal corporate limits." However, even then "[n]o person shall drive a vehicle on a highway or in a public vehicular area at a speed greater than is reasonable and prudent under the conditions then existing." N.C. Gen. Stat. § 20-141(a) (2011).

> Whenever the [DOT] determines *on the basis of an engineering and traffic investigation* that any speed allowed by subsection (b) is greater than is reasonable and safe under the conditions found to exist upon any part of a highway outside the corporate limits of a municipality or upon any part of a highway designated as part of the Interstate Highway System or any part of a controlled-access highway (either inside or outside the corporate limits of a municipality), the Department of Transportation shall determine and declare a reasonable and safe speed limit.

N.C. Gen. Stat. § 20-141(d)(1) (emphasis added). In this case, as has already been established, no events triggering an engineering and traffic investigation occurred prior to the accident in question. Thus, the Commission's finding of fact is supported by evidence in the record.

Because competent evidence supports the Commission's findings of fact, the findings are conclusive on appeal. *See Hassell v. Onslow County Bd. of Educ.*, 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008) ("[T]he Commission's findings of fact are conclusive on appeal when supported by competent evidence . . . ." (citation omitted)). Thus, the Commission's finding of fact 23 is conclusive: "Based upon the greater weight of the evidence, the Full Commission finds that [p]laintiff[s] [have] failed to prove that [DOT] breached any duty owed to Plaintiff[s]." Similarly, because the Commission's findings of fact are supported by competent evidence, the Commission did not err in basing its conclusions of law on said findings of fact.

## II

[2] Plaintiffs also contend that they established that their injuries were proximately caused by DOT's failure to maintain SR 1422 in a safe condition by failing to post warning signs. However, because competent evidence supports the Commission's finding that the DOT did not breach its duty to maintain SR 1422 in a safe condition, we do not need to reach the issue of proximate cause.

Accordingly, we affirm the Opinions and Awards of the Full Commission.

Affirmed.

Judges STEPHENS and THIGPEN concur.